# SUPPLEMENT

## OPINION OF THE JUSTICES TO THE SENATE.

In the opinion of the justices, given at the request of the Senate under c. 3, art. 2, of the Constitution, a proposed "Act to regulate the correction of answers to bar examination questions," and in effect prohibiting the marking of examination papers of applicants for admission to the bar by any person not a member of the board of bar examiners, would be unconstitutional.

On March 29, 1932, the Senate adopted the following order:

WHEREAS, There is pending before the Senate a bill entitled, "An Act to regulate the correction of answers to bar examination questions", printed as Senate document number three hundred and twenty-two, a copy of which is hereto annexed; and

WHEREAS, Grave doubt exists as to whether the enactment of such a bill properly lies within the legislative province as defined and limited by the Constitution of the Commonwealth; accordingly be it

ORDERED, That the Senate require the opinions of the Honorable the Justices of the Supreme Judicial Court on the following important questions of law: —

1. Would the General Court be usurping the functions of the judiciary in enacting such a bill?

2. Would such bill, if enacted into law, be violative of Article XXX of the Declaration of Rights?

3. To what extent is the admission of candidates to the office of attorney-at-law subject to regulation and control by the General Court?

Section 1 of the proposed act read as follows:

"Section thirty-six of chapter two hundred and twenty-one of the General Laws is hereby amended by adding at the end thereof the following: —Nothing in this act shall be construed as permitting the marking of examination papers by any person not a member of this board."

The order was transmitted to the Justices on March 31, 1932, and on April 20, 1932, they returned the following answers:

To The Honorable the Senate of the Commonwealth of Massachusetts:

The Justices of the Supreme Judicial Court respectfully submit these answers to the questions contained in an order adopted March 29, 1932, and transmitted to them two days later, a copy whereof is hereto annexed.

The questions pertain to a pending bill entitled "An Act to regulate the Correction of Answers to Bar Examination Questions." The substance of the bill is an amendment to G. L. c. 221, § 36, respecting the board of bar examiners, to the effect that the marking of examination papers of applicants for admission to the bar by any person not a member of the board is prohibited. The questions are directed to the point whether such bill if enacted would be an unconstitutional interference with the functions of the judicial department of government. It has not been determined in any decision of the Supreme Judicial Court where the ultimate power rests as to admission to the bar under the Constitution. The opinion in *Robinson's Case*, 131 Mass. 376, refers both to statutes and to action by the judiciary, there being no conflict between the two. There is nothing bearing on the point in *Ames* v. *Gilman*, 10 Met. 239, *Bishop* v. *Hall*, 9 Gray, 430, or *Bergeron, petitioner*, 220 Mass. 472.

By art. 30 of the Declaration of Rights of the Constitution, the government of the Commonwealth is divided into three departments and it is provided that "the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men." By art. 29 the independence of the judicial department is declared to be essential to "an impartial interpretation of the laws, and administration of justice." There is no provision in the Constitution refer-

ring in terms to the admission of attorneys to practice in the courts. The Constitution thus separates with singular precision and unmistakable clarity the sovereign power of the State into three departments. It creates each supreme in its respective field. It allots the legislative power to the General Court. With equal impressiveness of words it assigns judicial power to the courts.

It is indispensable to the administration of justice and the interpretation of the laws that there be members of the bar of sufficient ability, adequate learning and sound moral character. This arises from the need of enlightened assistance to the honest, and restraining authority over the knavish, litigant. It is highly important, also, that the public be protected from incompetent and vicious practitioners, whose opportunity for doing mischief is wide. It was said by Cardozo, C.J., in *Karlin* v. *Culkin*, 248 N. Y. 465, 470–471: "'Membership in the bar is a privilege burdened with conditions.'" One is admitted to the bar "for something more than private gain." He becomes "an officer of the court, and, like the court itself, an instrument or agency to advance the ends of justice. His co-operation with the court" is due "whenever justice would be imperilled if co-operation was withheld." Without such attorneys at law the judicial department of government would be hampered in the performance of its duties. That has been the history of attorneys under the common law, both in this country and in England. Admission to practice as an attorney at law is almost without exception conceded to be a judicial function. Petition to that end is filed in court, as are other proceedings invoking judicial action. Admission to the bar is accomplished and made open and notorious by a decision of the court entered upon its records. The establishment by the Constitution of the judicial department conferred authority necessary to the exercise of its powers as a co-ordinate department of government. It is an inherent power of such a department of government ultimately to determine the qualifications of those to be admitted to practice in its courts, for assisting in its work, and to protect itself in this respect from the unfit, those

lacking in sufficient learning, and those not possessing good moral character. Chief Justice Taney stated succinctly and with finality in *Ex Parte Secombe*, 19 How. 9, 13: "it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed."

There is nothing in the Constitution, either in terms or by implication, to indicate an intent that the power of the judiciary over the admission of persons to become attorneys is subject to legislative control. The grant of legislative competency to the General Court is in broad language (c. 1 of the Constitution, and especially c. 1, § 1, art. 4). But it is subject to the impressive limitations of art. 30 of the Declaration of Rights already quoted. It does not embrace the power to override the judicial department of government as to the qualifications of those to be admitted to practice law. The inherent jurisdiction of the judicial department of government over attorneys at law is illustrated in several of our decisions to the effect that power to remove an attorney for misconduct, malpractice, or deficiency in character, although recognized by statute (G. L. c. 221, § 40, as amended by St. 1924, c. 134), is nevertheless inherent and exists without a statute. *Randall, petitioner,* 11 Allen, 472. *Matter of Carver,* 224 Mass. 169, 172, and cases cited. *Matter of Ulmer,* 268 Mass. 373, 397, and cases cited. No sound distinction can be drawn with respect to attorneys at law between the power to admit and the power to remove under the terms of the Constitution.

Numerous statutes have been passed making provision in aid of the judicial department in reaching a proper selection of those qualified for admission as attorneys to practice in the courts. It is not necessary to review them in detail. Like many other statutes, they have been enacted to enable the courts to perform their duties. They have been enacted, also, in the exercise of the police power to protect the public from those lacking in ability, falling short in learning, or deficient in moral qualities, and thus incapable of maintaining the high standard of conduct

justly to be expected of members of the bar. No statute can control the judicial department in the performance of its duty to decide who shall enjoy the privilege of practicing law. Statutes hitherto enacted have been followed as the basis of its action. No contentions have arisen in the courts concerning their validity. Statutes respecting admissions to the bar, which afford appropriate instrumentalities for the ascertainment of qualifications of applicants, are no encroachment on the judicial department. They are convenient, if not essential, to enable the judicial department properly to perform this duty. The establishment, in 1897, of a State board of bar examiners, in place of the county boards previously existing, is an example. Statutes of that nature are valid provided they do not infringe on the right of the judicial department to determine who shall exercise the privilege of practicing in the courts and under what circumstances and with what qualifications persons shall be admitted to that end. When and so far as statutes specify qualifications and accomplishments, they will be regarded as fixing the minimum and not as setting bounds beyond which the judicial department cannot go. Such specifications will be regarded as limitations, not upon the judicial department but upon individuals seeking admission to the bar. There is no power in the General Court to compel the judicial department to admit as attorneys those deemed by it to be unfit to exercise the prerogatives and to perform the duties of an attorney at law.

These conclusions in our opinion flow irresistibly from the provisions of the Constitution.

These conclusions are in accord with principles declared in substance by the great majority of courts in this country, many decisions of which are collected in a footnote.*

---

* *In re Bailey,* 30 Ariz. 407, 412–413. *In re Day,* 181 Ill. 73, 82, 94. *People* v. *Peoples Stock Yards Bank,* 344 Ill. 462, 470. *Olmsted's Case,* 292 Penn. St. 96, 103–104. *In re Leach,* 134 Ind. 665, 671. *Hanson* v. *Grattan,* 84 Kans. 843, 845. *In re Branch,* 41 Vroom, 537, 574–575. *In re Application of K.* 88 N. J. L. 157. *In re Bruen,* 102 Wash. 472, 476. *In re Application for License to Practice Law,* 67 W. Va. 213, 218. *Danforth* v. *Egan,* 23 S. D. 43, 47. *In re Platz,* 42 Utah, 439, 443–444. *State* v. *Cannon,* 240 N. W. R. (Wis.) 441. *Ex parte Garland,* 4 Wall. 333, 378–379. *Brydonjack* v. *State Bar,* 208 Cal. 439, 443–444. Contra, *In re Applicants for License to Practice Law,* 143 N. C. 1; *Matter of Cooper,* 22 N. Y. 67; but compare *People ex rel. Karlin* v. *Culkin,* 248 N. Y. 465, 477.

The pending bill is in amendment of a part of the statutes mainly designed to aid the judicial department in the performance of its duty as to the admission of attorneys at law to practice in the courts. The pending bill, in form prohibitory, is also mandatory. It in substance requires that, if written examinations are held for ascertaining the fitness of applicants for admission to the bar, the marking of such examination papers must be done by members of the board of bar examiners. It is an explicit direction as to a means of finding out the qualifications of petitioners for admission to the bar. It does not state qualifications or prescribe conduct without which one may not become such petitioner; it does not even apply to such petitioners. It is not a mere limitation upon the powers of an instrumentality created by the Legislature to assist the court. It deals solely with the exercise of the judicial function, namely, discovery of the fact whether each applicant is sufficiently learned in the law to be admitted to practice as an attorney at law. The provisions of the pending bill fall within the same class as would proposed statutes fixing the passing marks for admission to the bar, the branches of law on which applicants should be examined, the number of questions to be asked, the length of time to be devoted to examinations, the tests of moral character to be adopted and the means for meeting those tests, and other like matters. If subjects similar to these were held to be within legislative cognizance, it would be vain to say that final power over admission to the bar was within the control of the judicial department of government. Whether the examinations of applicants for admission to the bar shall be wholly written, or wholly oral, or partly written and partly oral, is a matter for final determination by the judicial department. So, also, is the relative weight to be attributed to the results of written and oral examinations. If the judicial department decides that the marking of the written examinations may be performed by competent persons not members of the board but acting under the direction of such members, that pertains directly to the ascertainment of the qualifications of applicants. It is a definite attribute of the judicial

department and not an immaterial incident. The pending bill is different in its fundamental conception from many statutes indubitably valid, wherein practice and procedure both civil and criminal, rules of evidence, and substantive provisions of law have been altered. Statutes of that nature fall within the classification of wholesome and reasonable laws within the grant of power to the General Court to enact under the Constitution, and do not impinge upon the powers allotted to the judicial department. They are distinguishable in essential features from the pending bill, which directly affects the capacity of the judicial department to function.

We therefore answer questions 1 and 2 of the order in the affirmative. It seems unnecessary to make further answer to question 3.

We think that the Honorable Senate ought to be informed that before the adoption of the present plan of employing assistants to aid the bar examiners in marking examination papers, it was approved by the justices of the Supreme Judicial Court. The pending bill has been considered under the heavy sense of constitutional duty to advise the Honorable Senate.

ARTHUR P. RUGG.
JOHN C. CROSBY.
EDWARD P. PIERCE.
WILLIAM CUSHING WAIT.
GEORGE A. SANDERSON.
FRED T. FIELD.
CHARLES H. DONAHUE.