[Nos. C. D. 2902, 2900. *En Banc.* August 30, 1945.]

*In the Matter of the Application of* ROBERT E. LEVY *for Admission to Practice Law.*

*In the Matter of the Application of* JOHN M. WARNOCK *for Admission to Practice Law.*[1]

[1]Reported in 161 P. (2d) 651.

*John J. Kennett*, for applicant Robert E. Levy.

*Phil G. Warnock*, for applicant John M. Warnock.

*S. H. Kelleran*, *amicus curiae*.

ROBINSON, J.—Oral argument on behalf of the moving parties, in the above-entitled matters was heard on July 16, 1945, by the court sitting *En Banc*. Although there are factual differences in the two cases, since the major question presented is inherent in both, they will be decided in one opinion.

Both Major Levy and Staff Sergeant Warnock move for immediate admission to practice at the bar of this state. Each of them concedes that he does not meet the requirements of Rule XXVI of the rules of this court concerning the admission of veterans, adopted by the court on February 13, 1945 [21 Wn. (2d) xvi]. Each alleges, however, and each submits adequate proof of those allegations, that he does meet the requirements of chapter 181, p. 509,

Laws of 1945, enacted by both houses of the legislature on March 6, 1945, and approved by the governor shortly thereafter, and each presents convincing evidence that he was assigned to legal work in the army and performed it with distinction. However, when it comes to the theory upon which the granting of admission is urged, there is the widest possible divergence.

It is contended by counsel for Sergeant Warnock that the statute, having been passed after the promulgation of the rule, controls the matter, and that his client is entitled to be forthwith admitted to the practice of law in this state as a matter of right. Major Levy's counsel, on the other hand, concedes that, by overwhelming legal authority, the court rule is controlling, since the exclusive power to admit attorneys is inherent in the courts of which they seek to be made officers, and prays that Major Levy be forthwith admitted, in the exercise of that inherent power. Realizing that the court cannot, without undue and unlawful discrimination, make an exception to the rule in favor of an individual applicant for admission, he accompanies his client's motion with a supplementary document or pleading entitled: "In the matter of a request for an amendment of Rule 26 of the Supreme Court Rules."

It follows from the foregoing analysis that the first question presented is whether the court rule is abrogated or superseded by the legislative act. If it is, both applicants are entitled to admission. If it is not, the second question presented is whether this court should amend the rule in order to render Major Levy, and other persons similiarly situated, admissible to practice.

The text of the court rule is permanently recorded in 21 Wn. (2d) xvi, and reads as follows:

"ADMISSION TO PRACTICE—VETERANS.

"Subject to existing requirements in respect to citizenship, residence, and character qualifications, an applicant shall be admitted without examination if

"(a) he entered the active military or naval service of the United States or a co-belligerent after September 1,

1940, served in such active service for at least one year, and was discharged or released from active duty under conditions other than dishonorable; and

"(b) the applicant (i) was graduated from an approved law school before entering active service and after the bar examination next preceding his entry into such service, or (ii) was graduated from an approved law school while in such service, or (iii) had satisfactorily completed three full years of study at either the University of Washington Law School or the Gonzaga University Law School at the time of entering active service and has subsequently been graduated from such school; and

"(c) the applicant was a resident of the state of Washington at the time of graduation from law school, if such graduation preceded his entry into active service or, if not, at the time of entering such service; and

"(d) subsequent to such discharge or release the applicant has completed to the satisfaction of the dean a refresher course of at least six months duration at either the University of Washington Law School or the Gonzaga University Law School; and

"(e) the applicant has not previously failed the bar examination of this or any other state."

Chapter 181, p. 509, Laws of 1945, is an act making additions to the existing statute regulating admission to practice. In the interests of brevity, in quoting these additions, we omit the formal introductory matter:

"Section 7-A. Any person who shall have graduated from any accredited law school and after such graduation shall have served in the Armed Forces of the United States of America between December 7, 1941, and the termination of the present World War, *may be admitted* to the practice of law in the State of Washington and to membership in the Washington State Bar Association, upon motion made before the Supreme Court of the State of Washington, provided the following is made to appear:

"(a) That the applicant is a person of good moral character over the age of twenty-one (21) years;

"(b) That the applicant, at the time of entering the Armed Forces of the United States, was a legal resident of the State of Washington.

"(c) That the applicant's service in the Armed Forces of the United States is or was satisfactory and honorable." (Italics ours.)

Section 7-B prescribes the method of proof, if the applicant is still in the armed forces.

Section 7-C prescribes the method of proof, if the applicant has been discharged from the armed forces.

Sections D and E are not relevant to our present inquiry; but there is another added section which, while it has no direct relevance to the parties now before us, has, as will be later shown in this opinion, a definite bearing upon the main question which their applications present for decision:

"Section 7-F. Any person who has served as presiding officer of either the House of Representatives or the Senate of the State of Washington as Speaker of the House or President of the Senate for six (6) consecutive regular sessions of the Legislature *may be admitted* to the practice of law in the State of Washington and to membership in the Washington State Bar Association without examination, upon motion made before the Supreme Court of the State of Washington." (Italics ours.)

A comparison of the court rule with the legislative act at once shows that the rule contemplates admission after the student has returned from service, while the act permits admission while he is still in service. The rule applies to persons who entered service after September 1, 1940; the act, to persons who served after December 7, 1941. But the vital difference in the requirements is this: Under the provisions of the legislative act, the applicant may be admitted on presentation of a diploma from an approved law school, while, under the rule, he cannot be admitted on his diploma alone. He must, in addition, have either passed a regular bar examination or have completed a six months' refresher course at the University of Washington or the Gonzaga University law school. There are other requirements in the rule that are not made in the act. The privilege of being admitted without examination, if a refresher course be taken, is not extended to persons in the service who have previously failed the bar examination of this or any other state. Nor can one receive the benefits of the rule if he graduated in time to have taken the bar examination before entering naval or military service.

It is apparent that Sergeant Warnock cannot qualify under the rule, since he has neither passed a bar examination nor taken a refresher course. Major Levy also has neither passed an examination nor taken a refresher course. He cannot qualify under the rule, for several other reasons: His record, as presented to us, shows that he twice took, and failed to pass, the Washington state bar examination eleven years ago, and, if we understand the record rightly, he entered military service prior to September 1, 1940. Furthermore, the diploma upon which he bases his motion for admission was awarded him more than seven years ago, and at least several bar examinations were held before he entered military service.

For reasons that will be hereinafter set out, we think that the question as to whether or not the legislative act supersedes the court rule is somewhat academic. However, Sergeant Warnock's earnest contention that, as a matter of law, he is entitled to admission by virtue of the provisions of the legislative act, deserves the courtesy of examination and discussion.

We find, upon an examination of the authorities, that they are almost unanimously in accord with the following statement found in *Brydonjack v. State Bar*, 208 Cal. 439, 281 Pac. 1018, 1020, 66 A. L. R. 1507:

"Admission to practice is almost without exception conceded everywhere to be the exercise of a judicial function, . . . Admissions to practice have also been held to be the exercise of one of the inherent powers of the court. (*In re Bruen*, 102 Wash. 472 [172 Pac. 1152]; *In re Chapelle*, 71 Cal. App. 129 [234 Pac. 906].)"

It will be noted that a former decision of this court is cited as authority for the propositions above quoted from the California decision. This court had said the equivalent as early as in *In re Lambuth*, 18 Wash. 478, 51 Pac. 1071. There was nothing original in these holdings. As early as 1856, in an opinion of the supreme court of the United States, it was said:

"And it has been well settled, by the rules and practice of common-law courts, that it rests exclusively with the

court to determine who is qualified to become one of its officers, as an attorney and counsellor, and for what cause he ought to be removed. The power, however, is not an arbitrary and despotic one, to be exercised at the pleasure of the court, or from passion, prejudice, or personal hostility; but it is the duty of the court to exercise and regulate it by a sound and just judicial discretion, whereby the rights and independence of the bar may be as scrupulously guarded and maintained by the court, as the rights and dignity of the court itself." *Ex parte Secombe*, 60 U. S. (19 How.) 9, 13, 15 L. Ed. 565. See, also, *Ex parte Garland* (1866), 71 U. S. (4 Wall.) 333, 18 L. Ed. 366.

Among the many state decisions to the same effect, that of *In re Day* (1899), 181 Ill. 73, 54 N. E. 646, 50 L. R. A. 519, is regarded as a leading case. Opinion of the Justices (1932), 279 Mass. 607, 180 N. E. 725, 81 A. L. R. 1059, is in the same category, and is especially valuable for its footnote list of citations. In *In re Day, supra,* a graduate of an Illinois law school which the court regarded as a "diploma mill," moved for admission, relying on a statute authorizing admission of graduates of law schools on diploma. The court said, in part:

"The function of determining whether one who seeks to become an officer of the courts and to conduct causes therein is sufficiently acquainted with the rules established by the legislature and the courts governing the rights of parties and under which justice is administered pertains to the courts themselves. They must decide whether he has sufficient legal learning to enable him to apply those rules to varying conditions of fact and to bring the facts and law before the court so that a correct conclusion may be reached. The order of admission is the judgment of the court that he possesses the requisite qualifications, under such restrictions and limitations as may be properly imposed by the legislature for the protection and welfare of the public. The fact that the legislature may prescribe the qualifications of doctors, plumbers, horseshoers and persons following other professions or callings not connected with the judicial system, and may say what shall be evidence of such qualifications, can have no influence on this question. A license to such persons confers no right to put the judicial power in motion or to participate in judicial proceedings. The attorney is a necessary

part of the judicial system, and his vocation is not merely to find persons who are willing to have lawsuits. He is the first one to sit in judgment on every case, and whether the court shall be called upon to act depends on his decision. It is our duty to maintain the provision of the constitution that no person or collection of persons, being one of the departments of the government, shall exercise a power properly belonging to another, and if the legislature by inadvertence, as in this case, assumes the exercise of a power belonging to the judicial department, it should only be necessary to call its attention to the restraint imposed by the constitution."

■ Such a pronouncement seems rather startling, in view of the fact, known to everyone, that the legislatures of all of the states, including our own, have repeatedly passed acts regulating admissions to the bar. Are such acts wholly ineffective? The answer to that question is that they are not, in so far as, under the police power, they provide minimum requirements. But the legislative power cannot be exercised in such a way as to deprive the courts of the power to require additional qualifications. We forbear further discussion of this point and omit further citations because the case law on the subject is overwhelmingly, and in fact almost unanimously, contra to Sergeant Warnock's contention. All of the pertinent decisions may be found collected almost to date by referring to the thirty-two page note in 144 A. L. R., beginning at page 150, following the very recent decision in *State ex rel. Ralston v. Turner*, 141 Neb. 556, 4 N. W. (2d) 302, decided on June 5, 1942. This case, the latest comprehensive decision dealing with the subject which has been cited or which we have been able to find, contains a thorough discussion as to the relative power of the court and legislature regarding admissions to the bar. The court, in deciding that case, had this to say of the legislature and the legislative act:

"L.B. 114 constitutes an endeavor on the part of the legislature to go beyond the concept of minimum requirements for an applicant to take an examination for admission to the bar, and to dictate to the supreme court, in view of the authorities heretofore cited and accepted as law, that the judicial department shall be shorn of its power to

place higher standards or requirements of applicants for admission to the bar than the legislature has provided; that the legislature shall exercise, from and after the passage of the legislative bill, a power which belongs to the judiciary, and that all decisions of this court announcing the concept of the judicial functions in reference to the subject matter are a nullity.

"L.B. 114 is unconstitutional in that it directly usurps the inherent power of this court to fix and determine the qualifications of an applicant for admission to the bar in this state on a subject which naturally falls within the orbit of the judicial branch of government."

■ We have hereinbefore stated that we consider the question of whether the act supersedes the court rule as academic. It *prima facie* appears, when the language of the act is considered, that our legislature had no intention whatever of encroaching upon, or usurping, the powers of this court. It is unmistakably apparent that it did not, when the history of the enactment is considered.

Chapter 181, p. 509, Laws of 1945, as finally enacted, originated partly in the Senate as senate bill No. 56 and partly in the House as house bill No. 310. The senate bill was concerned with the admission of veterans to practice, and, as introduced in the Senate and first passed, § 7-A read as follows:

"Any person who shall have heretofore graduated from any accredited law school in the State of Washington and after such graduation shall have served in the Armed Forces of the United States of America, *shall* be admitted to the practice of law in the State of Washington and to membership in the Washington State Bar Association, upon motion made before the Supreme Court of the State of Washington, provided the following is made to appear: . . ." (Italics ours.)

House bill No. 310 also related to admissions to the bar, and, as introduced, contained the following proviso:

"Any person who has served as presiding officer of either the House of Representatives or the Senate of the State of Washington, as Speaker of the House or President of the Senate for three (3) successive terms, *shall* be admitted to the practice of law in the State of Washington and to

membership in the Washington State Bar Association without examination, upon motion made before the Supreme Court of the State of Washington." (Italics ours.)

The senate bill finally went to a free conference committee, and in that committee the above proviso of the house bill was attached to the senate bill. The combined bills were then passed by both houses as chapter 181; but, before that was done, the words "shall," which we have italicized in quoting the two bills as originally introduced, were, in both, changed to "may." Consequently, chapter 181, as finally enacted, provides that veterans possessing certain qualifications *"may be admitted,"* and persons serving as presiding officers of the House or the Senate for six consecutive sessions *"may be admitted."* This is not language of direction and command.

In enacting legislation upon a particular subject, the legislature is not only presumed to be familiar with its previous legislation relating thereto, but also with the court decisions, if any, construing such former enactments. This presumption would seem to be especially strong in the case of legislation concerning admission to the bar, since there are always a large number of lawyers in our legislative bodies. In *In re Ellis*, 118 Wash. 484, 203 Pac. 957, decided in 1922, this court construed the meaning of the words "may be admitted," as used in a legislative act regulating admissions to the bar. Section 9, chapter 126, p. 411, Laws of 1921, reads, in part, as follows:

"Applicants may be admitted on accredited certificates or upon examination. An accredited certificate shall be:

. . . .

"(2) A diploma of graduation from the law school of the University of Washington."

The court stated the case, as follows:

"The applicant, Ellis, seeks admission to practice law in this state, claiming that he is entitled to admission, as a matter of right, without examination as to his learning in the law, because he is a graduate of the law school of our state university and has been granted a diploma evidencing that fact. His application having been in due course

considered by the state board of law examiners, that board communicated its recommendation thereon to the court, as follows:

" '. . . that the application be denied for the reason that it does not appear that the applicant has taken and passed the law examination. The board, having in its discretion, adopted the rule that all graduates of the University of Washington Law School must take and pass the law examination before they will be recommended for admission.' "

The court then stated that the question of admission to practice law in this state is one to be determined ultimately by the court; that the board of examiners is an arm of the court; that, therefore, a rule adopted by them has the standing of a court rule; that the real question presented was whether the rule was a violation of § 9 of the statute; and that this question was to be answered by determining whether the word "may," as found in the introductory paragraph of § 9, means "must" or "shall," in so far as it relates to subd. 2 of that section. The court, while conceding that "may," when used in statutes, has frequently been construed to mean "must" or "shall," concluded:

"But we think that, when the nature of the right to practice law is considered, such argument is not sufficiently persuasive to induce the holding that the word 'may,' as used in this statute, has other than its ordinary popular meaning."

Having so concluded, the court rendered its decision, as follows:

"The recommendation of the state board of law examiners is approved and the application denied."

We are convinced that, in enacting chapter 181, the 1945 legislature intentionally avoided encroaching upon the inherent power of the court relating to admissions to the bar, since it rejected the mandatory language in which both bills, which it combined and enacted in chapter 181, were originally drawn, and substituted for that language the exact phraseology which the court had previously held not to be mandatory when used in a former enactment on the same subject.

Furthermore, in enacting chapter 181, the legislature merely added §§ 7-A, B, C, D, E, and F to § 7 of chapter 94, p. 399, Laws of 1933, commonly known as the Integrated Bar Act, and left § 8 thereof standing wholly without change or amendment:

"Sec. 8. *Admission and Disbarment.* The said board of governors shall likewise have power, in its discretion, from time to time to adopt rules, *subject to the approval of the supreme court,* fixing the qualifications, requirements and procedure for admission to the practice of law; . . ." (Italics ours.)

■ Finally, even if we were not convinced of the soundness of the views just expressed, we would feel constrained to hold that chapter 181 is not mandatory, upon the authority of the well-considered opinion in the case of *In re Ellis, supra.* We, therefore, hold that Sergeant Warnock is not entitled to admission as a matter of law.

As already stated, counsel for Major Levy does not insist on the admission of his client as a matter of law, but requests it as a matter of grace. He invokes the court's inherent power to admit, and urges that it be exercised in his client's favor. It is true, of course, that the court has the *power* to admit his client, but, since he does not have the qualifications required by the rule, the court cannot exercise that power, while the rule remains in existence, without violating principles of civilized jurisprudence, so elementary as not to require discussion. Realizing this, counsel has urged the court, on oral argument and by a formal written request, to amend the rule. He points out that Major Levy would be entitled to admission under chapter 181, and, although conceding that its provisions have no mandatory force, maintains that, since the legislature represents the people, we are, in a sense, obligated to give that enactment great weight as an expression of the popular will. It is concededly entitled to great respect as reflecting legislative opinion, and it must be admitted that it is made crystal clear on the face of the act that the legislature deemed it a matter of immediate and outstanding importance that law school students in the armed forces,

and persons who have served as presiding officer of the Senate or as speaker of the House for six consecutive regular sessions of the legislature, should forthwith be admitted to practice; for it attached to the act the following section:

"Sec. 7. This act is necessary for the immediate preservation of the public peace, health and safety, the support of the state government and its existing public institutions, and shall take effect immediately."

In support of Major Levy's request that we amend Rule XXVI, which is, in essence, a request that we permit his admission without examination, it is alleged that he received his diploma on December 17, 1937. Since he furnished no formally authenticated proof of that allegation, we have made an investigation of the matter. We have found that he was graduated on that date. But we have found also, and this is supported by the records of the board of bar examiners which, since that board is an arm of the court, are also our records, that at least three fourths of the credits represented by the diploma were earned prior to June, 1932, more than thirteen years ago, he having quitted the law school on that date, not to return until he entered the spring quarter of 1936. However, the briefs state, and the records of the board of examiners show, that, during much of that interval, he studied in a law office. During the greater part of his army experience, he was assigned to legal work, and very full and ample proof has been supplied that he performed all such tasks assigned to him with credit and distinction. It is urged that, although he cannot qualify under the rule, he is, by reason of this experience, as well qualified as persons graduated as a result of work done immediately before going into the service, and that may, perhaps, be true, though, generally speaking, we are not disposed to regard legal work in the army as a satisfactory substitute for the systematic study of the law.

It will be recalled that the rule was passed for the benefit of those who went into, or were called into, the government service without an opportunity to take an examina-

tion. Major Levy graduated in December, 1937. Examinations were held in January, 1938, in July, 1938, and in January and July, 1939. It is said in the briefs that Major Levy did not take the January, 1938, examination because, having failed twice in 1934, he desired ample time for further study, and that he could not take it in July, 1938, because he was called into training by the army, and that this was also his situation in 1939. We assume that the reference is to short training periods, since it is stated in another portion of the brief that he has now served "approximately five years of active service." We quote from the brief an additional reason urged for his immediate admission:

"Another reason why Major Levy should be admitted to practice at this time is because the admission to practice quite probably would enable him to obtain higher ranks while in the Army."

Rules for admission to the bar are, of course, general in their specifications. They apply to classes of students, and are drawn to meet normal conditions. They cannot very well be tailored to meet the special merits of individuals. Nor is it their function to promote advancement in any line of endeavor other than the practice of law. To alter Rule XXVI to cover Major Levy's situation would require striking paragraph (e), also (i) of paragraph (b), and to change paragraph (a) so as to provide admission on diplomas issued as far back as 1937, which, in view of the fact that the whole purpose of the rule was to admit students who, as national guardsmen, were called to the colors in September, 1940, or who were called or volunteered later, but at such times that they could not take the current bar examinations before answering the call, would be something more than to amend the rule. It would practically abrogate it.

In so far as not modified with respect to veterans by the promulgation of Rule XXVI, requirements for admission at the end of a period of study have not been materially changed since 1933. The rules, as approved by the court, may be found in 193 Wash. 69a-83a. They provide, in sub-

stance, that no one may be admitted without taking an examination, and that to be eligible to take an examination, a student must either have satisfactorily completed two years of college work and graduated from a three-year course in law school, or satisfactorily completed two years of college work and worked and studied for four years in a law office. The standards have been advanced to this point, partly through legislative action and partly through court rules.

During territorial days, and indeed until 1909, there were no general education requirements whatever. Nor was an applicant required to spend a great deal of time in the study of law. Until 1895, the only requirement in that regard was eighteen months' study under the direction of a practicing lawyer. In 1895, this period was increased to two years. There was no further legislation for fourteen years. By that time the court could no longer personally examine the many applicants for admission. The law school had been successfully established at the university. The 1909 act (chapter 139, p. 533) provided that graduates of the law school of the University of Washington might be admitted on motion, but all other applicants should be examined by a board of examiners created by the act, and the first general education qualification, and the only one that has ever been made by the legislature, appeared in this act. It required candidates for admission to have had a high school education. That was also the requirement for admission to the law school. At that time (1909), since the law school course was but two years in length, the requirements were four years of high school and two years of law school. Some of the men who graduated from the law school had, therefore, but two years of University training, and were admitted on diploma. Yet, at that very time, the standards of legal education had so far advanced in the older and more populous states that men who had had seven years of university training were seeking admission to the bar of this state. Under the 1909 law, they were required to take the bar examinations, nevertheless.

It was inevitable that such disparities would not long continue. In 1922, as we have seen in discussing *In re Ellis, supra,* the court approved a rule discontinuing admissions on diploma, and since that date an examination has been required of all applicants. Later on, the general education requirement of two years of college work was also established through the medium of court rules.

While four years of college education and three years of legal study are required in a number of states, we, in common with the majority, have not been willing to extend the general education period. However, the trend is undoubtedly in that direction; for a comprehensive knowledge of English history, and indeed of Roman history, is essential to a thorough understanding of the common law and of the equitable doctrines which lie at the foundation of American jurisprudence. Then, too, changing conditions demand preparation in other fields. For example, in view of the developments of very recent years, we doubt that any lawyer would advise his son to embark in the general practice of law without acquiring at least a working knowledge of the theory and practice of accounting. In short, we do not think our standards for admission to the bar are *too high,* and we think, for reasons hereinafter set out, that, despite the dislocations caused by the war, they should be strictly maintained.

In September, 1944, some months before we approved Rule XXVI, the House of Delegates of the American Bar Association passed a resolution which, in part, reads as follows:

"2. The American Bar Association has learned of relaxations in some states of the established standards of admission to the bar for men in the Armed Forces, and it anticipates movements aimed at further relaxations for returning veterans. . . .

"The American Bar Association is firmly of the opinion, however, that it is a disservice to returning veterans to provide them with shortcuts for admission to the bar, since such shortcuts would tend to make possible and encourage admission to the bar without proper preparation. It is convinced also that this is a subject in which the public is

concerned and that the lowering of the standards of admission to the bar is against the public interest, which requires that only qualified persons be admitted to the bar.

"*Be It Therefore Resolved,* That the American Bar Association is opposed to movements that would relax or tend to relax standards for admission to the bar and that it reaffirms its endorsement of the established standards of the Association which specify, among other things, that all applicants should have had at least two years of college work, or its equivalent, as a condition to admission to law study; that they have been graduated from an approved law school offering a three-year course of full-time study or a four-year course of part-time study; and that they pass a bar examination; and

"*Resolved Further,* That the American Bar Association urges the local and state bar associations, and all agencies which have power to determine admission requirements for the bar, in those states that have not yet met the minimum requirements of this Association, that they establish these requirements in their respective states; and that these several agencies in all of the states resist every movement aimed to relax the standards of admission to the bar." 69 Reports of American Bar Ass'n (1944), pp. 186, 187. ·

Rule XXVI was promulgated by this court in substantially the same form that it came to us from the board of governors of the state bar association, who had drafted the same with the advice and assistance of the board of law examiners and the deans of the law schools of the University of Washington and Gonzaga University. After slight changes were made, we accepted and approved it, and we still regard it as a desirable rule. The rule is a consequence of the enactment of the servicemen's readjustment act of 1944 (58 Stat. 284), Public Law 346, commonly known as the G. I. Bill of Rights. Chapter 4, Title II, of this Federal act, relates to the education of veterans. Under its provisions, any person who served in active military or naval service after September 16, 1940, and has been honorably discharged;

" . . . and whose education or training was impeded, delayed, interrupted, or interfered with by reason of his entrance into the service, *or who desires a refresher or retraining course, . . .* " (Italics ours.)

is entitled to such a course for a period of one year, upon a Federal government allowance not to exceed five hundred dollars for tuition, books, etc., and fifty dollars per month for subsistence if without dependents, or seventy-five dollars per month if he has a dependent or dependents.

We believe, as the Congress which enacted that legislation and the then president who approved it must certainly have believed, that persons who were called into war service after having received a long and intensive course of technical education and training, and spent from one to five years in such service, are in need of a refresher course, and we think that this is especially true of students of the law. We are further of the opinion that a graduate of an approved law school who takes a six months' refresher course may be excused from taking the bar examination without seriously violating the spirit and purpose of the rule so strongly insisted upon in the resolution of the American Bar Association, hereinabove quoted, that all applicants for admission to the bar be required to take an examination.

At the conference held after oral argument, some of the members of the court were inclined to take the position, and may still hold that opinion, that the benefits given to the veterans by the rule are so great as to constitute an unlawful discrimination against those students who, due to some unfortunate physical infirmity, were not able to enter war service. But it must be remembered that the refresher course is not provided by the rule. It is a gift of the people of the United States, conferred through their duly constituted representatives. A law or rule having the force of law is not unlawfully discriminatory if based upon a reasonable classification. Here, one class is composed of students who have pursued the study of law for twenty-seven months; the other class is comprised of students who have not only completed the twenty-seven months' course, but an additional six months' course, or, in all, thirty-three months. Members of class one must take an examination to be admitted to the bar; members of class two are not required to do so. The classification is so ob-

viously reasonable that we deem further discussion of this point unnecessary.

■ Court rules are not, of course, as unalterable as the laws of the Medes and Persians. They are subject to change at any time, and it may well be that experience will reveal some faults or defects in Rule XXVI which are not now clearly apparent. At present, however, we are not willing to withdraw the rule or materially amend it.

For the foregoing reasons, the motions of Staff Sergeant Warnock and Major Levy for admission to the bar will be denied, and Major Levy's request for the amendment of Rule XXVI of our Rules for Admission to Practice will also be denied.

It is so ordered.

BEALS, C. J., MILLARD, STEINERT, SIMPSON, and JEFFERS, JJ., concur.

GRADY, J. (dissenting)—I am in accord with what has been decided by the majority opinion upon the legal phases of this case, but, after reading the briefs of counsel, considering their oral arguments, and giving the subject more mature reflection, I believe that Rule XXVI is too restrictive; that it does not adequately meet the objective it seeks to serve; and that it should be amended.

The rule extends a veteran's preference to those who have served at least one year in the armed forces of the United States and have been honorably discharged. It was adopted February 13, 1945, upon recommendation of the Washington State Bar Association. Its general purpose is to relieve veterans who have graduated from either of the approved law schools in the state of Washington, from taking a bar examination if certain conditions are met. After the rule was adopted, and on March 6, 1945, the legislature enacted chapter 181, p. 509, Laws of 1945. The material parts of the rule and the statute are set forth in the majority opinion and need not be repeated here.

Whenever it is determined that any kind of a preference should be extended to those who have served in the armed forces of the United States in a war, the first question that

arises is whether, by so doing, the public welfare will be adversely affected, and, if it is considered that it will not be so affected, then, the extent of the preference. I think it is generally the opinion that any preference should be substantial, immediately available, and capable of being attained with the least possible difficulty; otherwise, it does not meet the desired objective.

I am satisfied, considering the source of the rule, that the protection of those who might seek legal services was the first consideration on the part of those who were instrumental in its preparation and upon whose recommendation it was adopted by the court, and that, in order to demonstrate who possessed the necessary qualifications to be intrusted with the privilege of practicing law, it was felt that the serviceman should either take and pass a bar examination the same as others, or, if he did not desire to do so, take the prescribed refresher course in lieu thereof.

My main objections to Rule XXVI are that it does not apply to servicemen before final discharge from service, and that it requires a refresher course of six months. A serviceman may be greatly benefited, if he is admitted to the bar while still in the service, by advancement which can only come to him as an attorney at law, and the good of the service may be enhanced by his promotion. I regard the refresher course not only unnecessary, but the casting upon the serviceman an extra burden that he should not be required to assume, even though he may receive financial aid while taking such course. The knowledge he has acquired as a foundation to enter upon the practice of law, is not going to leave him between the time of his graduation from law school and when he is relieved from service. Of course, anyone is bound to learn something additional by going back to school, but a refresher course of six months cannot be more than a partial review of the field already covered, and its value will be more than offset by enabling the serviceman to have this time within which to adjust himself into the practice of his profession. Many persons, upon admission to the bar, enter into specialized legal service, or become instructors in law schools, or engage in some business

entirely foreign to the legal service, but it is not regarded as necessary that they take a refresher course if, later, they desire to enter into the general practice of the law.

In view of what we have decided, it may be said that the enactment of chapter 181, p. 509, Laws of 1945 was unnecessary; but we must not overlook the fact that the nature and extent of veterans' preferences involve a question of public policy. In the enactment of the statute, a co-ordinate branch of government, whose members were chosen by the people to represent them, has given expression that the standard of competency, which it considered those who are to receive legal services needed for their protection, was to be a graduate of one of the approved law schools in this state, and that such graduate, if he be a serviceman, should be extended a veterans' preference consisting of being admitted to the bar without taking and passing a bar examination. The lawyer members of the judiciary committees of the House and Senate had the benefit of Rule XXVI when the proposed legislation came before them, and must have considered the rule too restrictive. In the ultimate conclusion to be reached as to the nature and extent of the preference, the legislative viewpoint is entitled to most careful consideration. It is my belief that the general plan of veterans' preference, set forth in the statute, gives to the veterans a preference to which they are justly entitled, and one that is immediate and direct, and adequately meets the desired objective.

In order to give an immediate benefit, Rule XXVI should be amended forthwith so as to adopt substantially the part of chapter 181 of the Laws of 1945 relating to servicemen, and that the applications of Sergeant Warnock and Major Levy for admission to the bar should be granted.

MALLERY and BLAKE, JJ., concur with GRADY, J.

---

October 23, 1945. Petition of Robert E. Levy for rehearing denied.