306 S.E.2d 233

**STATE ex rel. John-Robin M. QUELCH, et al.**

v.

**George A. DAUGHERTY, et al., etc.**

**No. 15784.**

Supreme Court of Appeals of West Virginia.

March 30, 1983.

Dissenting Opinion July 27, 1983.

John-Robin M. Quelch, Kevin S. Cotter, Paul R. Sheridan, Jay T. McCamic, pro se.

Janet F. Steele, Asst. Atty. Gen., Charleston, for respondents.

HARSHBARGER, Justice:

Petitioners are four law students in good standing at West Virginia University School of Law. They have invoked our original jurisdiction to mandamus the Board of Law Examiners to admit them to practice law without taking the Bar examination. In 1981 our state legislature amended W.Va.Code, 30–2–1, to require all West Virginia University law school graduates after July 1, 1983, to take the examination. Until that time, West Virginia University Law School graduates had been "privileged", not required to successfully complete the examination in order to qualify for admission to practice. The Board of Law Examiners has taken no position on this writ.

The diploma privilege is found in both former Code, 30–2–1, and Rule 1.020 of the Code of Rules for Admission to the Practice of Law:

Former W.Va.Code, 30–2–1:

Any person desiring to obtain a license to practice law in the courts of this State shall appear before the circuit court of the county in which he has resided for the last preceding year and prove to the satisfaction of such court, or to the satisfaction of a committee of three attorneys practicing before such court, appointed by the court, that he is a person of good moral character, that he is eighteen years of age, and that he has resided in such county for one year next preceding the date of his appearance; and upon the presentation of such proof, the court shall enter an order on its record accord-

ingly. *The supreme court of appeals shall prescribe and publish rules and regulations for the examination of all applicants for admission to practice law,* which shall include the period of study and degree of preparation required of applicants previous to being admitted, as well as the method of examinations, whether by the court or otherwise. And the supreme court of appeals may, upon the production of a duly certified copy of the order of the circuit court, hereinbefore mentioned, and upon being satisfied that the applicant has shown, upon an examination conducted in accordance with such rules and regulations, that he is qualified to practice law in the courts of this State, and upon being further satisfied that such rules and regulations have been complied with in all respects, grant such applicant a license to practice law in the courts of this State, and such license shall show upon its face that all the provisions of this section and of the said rules have been complied with: *Provided, that any person who shall produce a duly certified copy of such order of the circuit court, and also a diploma of graduation from the college of law of West Virginia University, shall, upon presentation thereof in any of the courts of this State,* be entitled to practice in any and all courts of this State, and the order so admitting him shall state the facts pertaining to the same. (Emphasis supplied.)

Rule 1.020:

*Any person who shall produce a diploma of graduation from the College of Law of West Virginia University shall not be required to take the bar examination.* Such person must, however, satisfy all other requirements of these rules, including, but not limited to, the requirement that he or she has been a resident of West Virginia for more than thirty (30) days before being admitted to practice and that he or she has satisfied the requirements of Rule 2.000, Character of the Applicant. Volume 1A, W.Va.Code, page 269–270. (Emphasis supplied.)

Code, 30–2–1's proviso was amended as follows:

Provided, that any person who shall produce a duly certified copy of such order of the circuit court, and also a diploma of graduation from the college of law of West Virginia University reflecting a date of graduation prior to the first day of July, one thousand nine hundred eighty-three, shall, upon presentation thereof in any of the courts of this State, be entitled to practice in any and all courts of this State, and the order so admitting him shall state the facts pertaining to the same.

Petitioners contend that the legislature does not have authority to regulate admission to practice. That power is ours alone, certainly since the 1974 Judicial Reorganization Amendment to our State Constitution, W.Va. Const. art. VIII, §§ 1 and 3.

We need not again trace the historical development of judicial control over the practice of law. *See Lane v. W.Va. State Board of Law Examiners,* 170 W.Va. 583, 295 S.E.2d 670 (1982); *State ex rel. Askin v. Dostert,* 170 W.Va. 562, 295 S.E.2d 271 (1982); *Carey v. Dostert,* 170 W.Va. 334, 294 S.E.2d 137 (1982); *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641 (1981); *W.Va. State Bar v. Earley,* 144 W.Va. 504, 109 S.E.2d 420 (1959). We summarized its evolution in *State ex rel. Askin v. Dostert, supra* 170 W.Va. at 565–566, 295 S.E.2d, at 275:

It was decided at an early point in West Virginia jurisprudence that the Legislature possessed the authority to govern the admission and practice of attorneys in West Virginia courts, but that the judiciary retained its common law supervisory powers "to exclude or admit, on application for admission, or to dismiss, after admission, for misconduct or unfitness of character ...." *Ex parte Hunter,* 2 W.Va. 122, 182 (1867). However, as a result of legislative and constitutional modifications, the dichotomy of authority to regulate the practice of law, once shared by the legislative and judicial departments, has not survived in West Virginia. Today, the exclusive authority to define, regulate and control

the practice of law in West Virginia is vested in the Supreme Court of Appeals. *State ex rel. Frieson v. Isner,* 168 W.Va. 758, 285 S.E.2d 641 (1981).

In *Carey v. Dostert, supra* 170 W.Va. at 335, 294 S.E.2d, at 138, we wrote:

The power to supervise, regulate and control the practice of law includes the power to admit and disbar attorneys.

Syllabus Point 1 of *State ex rel. Barker v. Manchin,* 167 W.Va. 155, 279 S.E.2d 622 (1981) states:

Article V, section 1 of the Constitution of West Virginia * which prohibits any one department of our state government from exercising the powers of the others, is not merely a suggestion; it is part of the fundamental law of our State and, as such, it must be strictly construed and closely followed. (Footnote ours.)

 Any legislatively-enacted provision regarding bar admissions that conflicts with or is repugnant to a Supreme Court rule must fall. *Lane v. W. Va. State Board of Law Examiners, supra* 170 W.Va. at 585–586, 295 S.E.2d, at 673; *State ex rel. Frieson v. Isner, supra; State ex rel. Thorn v. Luff,* 154 W.Va. 350, 175 S.E.2d 472 (1970). The Judicial Branch may honor legislative enactments in aid of judicial power, but is clearly not bound to do so. *State ex rel. Frieson v. Isner, supra* 168 W.Va. at 776–777, 285 S.E.2d, at 654. *Accord, Feldman v. State Board of Law Examiners,* 438 F.2d 699 (8th Cir. 1971); *Ex parte Alabama State Bar,* 285 Ala. 191, 230 So.2d 519 (1970); *Application of Brewer,* Alaska, 430 P.2d 150 (1967); *Hunt v. Maricopa County Employees Merit System Commission,* 127 Ariz. 259, 619 P.2d 1036 (1980), *reh. denied; Merco Construction Engineers v. Municipal Court,* 21 Cal.3d 724, 147 Cal.Rptr. 631, 581 P.2d 636 (1978); *People v. Buckles,* 167 Colo. 64, 453 P.2d 404 (1968); *Martin v. Davis,* 187 Kan. 473, 357 P.2d 782 (1960) *appeal dismissed,* 368 U.S. 25, 82 S.Ct. 1, 7 L.Ed.2d 5; *In re Feingold,* 296 A.2d 492, 496 (Me.1972); *Attorney General v. Wal-*

*dron,* 289 Md. 683, 426 A.2d 929, 17 A.L.R.4th 794 (1981); *In re Opinion of Justices,* 289 Mass. 607, 194 N.E. 313 (1935); *In re Nevius,* 174 Ohio 560, 191 N.E.2d 166 (1963); *Bryant v. State,* Tex.Civ.App., 457 S.W.2d 72 (1970), *reh. denied. Cf., In Matter of Chi-Dooh Li,* 79 Wash.2d 561, 488 P.2d 259 (1971) (wherein no conflict was found between court's power to regulate bar admissions and legislation there in question). Some jurisdictions permit the legislature, in exercise of its police powers, to enact reasonable regulations for admission to the Bar. *Fuller v. Watts,* Fla., 74 So.2d 676 (1954), *reh. denied; State v. Cannon,* 206 Wis. 374, 240 N.W. 441 (1932). *Cf., In re Greer,* 52 Ariz. 385, 81 P.2d 96 (1938) (legislature sets minimum standards); *Application of Levy,* 23 Wash.2d 607, 161 P.2d 651, 162 A.L.R. 805 (1945), *reh. denied* (legislature can set minimum standards). Legislative enactments which are not compatible with those prescribed by the judiciary or with its goals are unconstitutional violations of the separation of powers.

The case reporters are replete with examples of state supreme courts invalidating legislation that encroaches upon their constitutionally granted powers. *Heiberger v. Clark,* 148 Conn. 177, 169 A.2d 652, 656 (1961); *Sams v. Olah,* 225 Ga. 497, 169 S.E.2d 790, 796 (1969), *reh. denied, U.S. cert. denied,* 397 U.S. 914, 90 S.Ct. 916, 25 L.Ed.2d 94; *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973); *In re 42 Pa.C.S. § 1703,* 482 Pa. 522, 394 A.2d 444 (1978); *In Matter of Washington State Bar Association,* 86 Wash.2d 624, 548 P.2d 310 (1976). The Kentucky Supreme Court recognized that any power that had resided in the legislature regarding bar admissions was superseded by Kentucky's 1975 Judicial Amendment:

There can be no doubt that this constitutional amendment completely removed the subject from any legislative authority and rendered obsolete and ineffective the statutes pertaining to it. Strangely,

---

* W.Va. Const. art. V, § 1:

"The legislative, executive and judicial departments shall be separate and distinct, so that neither shall exercise the powers properly belonging to either of the others; nor shall any person exercise the powers of more than one of them at the same time, except that justices of the peace shall be eligible to the legislature."

nevertheless, at its 1976 regular session the General Assembly reenacted provisions authorizing the Supreme Court to appoint a board of bar examiners and to organize and govern the bar, and again requiring that admission fees be remitted to the state treasury. Ch. 58, Acts of 1976; KRS 21A.130, 21A.150, 21A.160, 21A.140. These statutory provisions are void because they purport to erect powers and limitations that no longer fall within the legislative province. *Ex parte Auditor of Public Accounts*, Ky., 609 S.W.2d 682, 684 (1980).

Florida's Constitution, art. V, § 15, grants its supreme court exclusive jurisdiction to regulate admission and discipline of lawyers. Florida's legislature enacted a law about adapting or modifying state-given examinations for handicapped persons. The Florida Board of Bar Examiners challenged application of this law to its administration of the examination. Florida's Supreme Court acknowledged the laudatory intent of this law, but found it inapplicable to bar examinations:

> Because the Florida Constitution by its express terms vests exclusive jurisdiction in this Court to regulate the admission of persons to the practice of law, because the Florida Board of Bar Examiners is an attaché of this Court, and because the act imposes criminal penalties upon the Board for failure to adhere to its provisions, we find the act invalid as to the Board of Bar Examiners in administering the Florida Bar Examination. Our Constitution prohibits legislative interference with this Court's exercise of its power to goern admissions to The Florida Bar. Article V, Section 15, Florida Constitution. *In re Florida Board of Bar Examiners*, Fla., 353 So.2d 98, 100 (1977).

In *Archer v. Ogden*, Okl., 600 P.2d 1223 (1979), the Oklahoma court declared legislation about law practice by nonresidents unconstitutional, violating separation of powers rules. The legislation conflicted with supreme court rules permitting nonresidents to practice.

Alaska's Supreme Court in *Application of Steelman*, Alaska, 448 P.2d 817, 819 (1969), admonished the legislature not to attempt to modify admission standards that the court had set:

> The authority and responsibility for establishing clear and unambiguous standards for admission rests in this court and where the court has already established a standard it will not accept a legislative attempt to modify that standard which creates confusion and inconsistency without adding substantively to the standard.

Subsequent to the effective date of the constitutional amendment granting its supreme court authority to regulate admission to the bar and conduct of its members, Montana's legislature enacted a law establishing regulations for the admission of attorneys to practice. The Montana Supreme Court declared the statute void, violating the separation of powers doctrine. *In Matter of Senate Bill No. 630*, 164 Mont. 366, 523 P.2d 484 (1974).

■ There is no doubt that amended W.Va.Code, 30–2–1 is repugnant to and conflicts with our Rule 1.020. The former removed the diploma privilege that the latter grants. W.Va.Code, 30–2–1, as amended, is an unconstitutional usurpation of this Court's exclusive authority to regulate admission to the practice of law in this State. Petitioners and other West Virginia University Law School graduates shall be admitted to practice law without taking the Bar examination if they have met the other qualifications of Rule 1.020.

Writ granted.

NEELY, Justice, concurring:

I concur in the result in this case but for slightly different reasons than those stated by the majority. The 1981 amendment to *W.Va.Code*, 30–2–1 [1972] did not have the effect of requiring a bar examination of graduates of West Virginia University's College of Law. The amendment merely eliminated the time-honored, statutory diploma privilege that was enacted by the Legislature when it was thought that the Legislature could control certain aspects of the practice of law.

I do not agree with the majority that all aspects of the practice of law in West Virginia are within the exclusive control of the Supreme Court of Appeals. In this regard I fail to find the recent cases of this Court particularly persuasive. *Nemo debet esse judex in propria causa.* In my opinion, a legislative act requiring a bar examination would be within the prerogative of the Legislature under *W.Va. Const.,* art. VIII, §§ 1 and 3. However, the effect of the 1981 legislative amendment to *Code,* 30–2–1 [1972] that is now in question was not to *require* a bar examination of graduates of the West Virginia University College of Law, but rather to eliminate the *legislatively* mandated diploma privilege.

Our Rule 1.020 allows graduates of the College of Law to be admitted to practice without examination. Since the Legislature has not attempted to invalidate our Rule 1.020, I see no reason that Rule 1.020 should not remain in force and effect. Had the Legislature intended to require a bar examination they would have said so. In fact, the Legislature merely placed this question within the Court's discretion.

I despise bureaucratic requirements that demand that people perform vain acts. In a state like West Virginia where we have a competent law school specializing in West Virginia law, a bar examination becomes nothing but a nuisance. Consequently, I am pleased to leave the diploma privilege in place, but I believe that it is within the legislative prerogative to require by a specific statute that all candidates for admission to the bar take a bar examination.

Finally, my understanding of this matter is instructed by two great principles: First, one should always attempt to avoid the inveterate human compulsion to make the other man's life miserable for no ostensible reason; and second, if it ain't broke, don't fix it.

MILLER, Justice, dissenting:

It seems to me that the majority in its eagerness to demonstrate that this Court has the inherent power to regulate the practice of law has ignored the familiar postulate that a legislative act relating to the practice of law is not necessarily invalid. We recognized this principle in one of our earliest cases relating to the qualifications for the practice of law:

"But notwithstanding the jurisdiction of the courts over the subject it has been generally conceded that the legislature may in the exercise of its police power, prescribe reasonable rules and regulations for admissions to the bar, which will be followed by the courts. But the legislature may not impose unreasonable rules or deprive the courts of their inherent power to prescribe other rules and conditions of admission to practice." *In re Application for License to Practice Law,* 67 W.Va. 213, 218, 67 S.E. 597, 599 (1910).

Other states have followed this principle. The primary test used is whether the statute is compatible with the judiciary's goal in regard to the practice of law. One of the best expressions of this rule is found in *Sadler v. Oregon State Bar,* 275 Or. 279, 286, 550 P.2d 1218, 1222, 83 A.L.R.3d 762, 768 (1976):

" 'The power to admit the applicants to practice law is judicial and not legislative, and is, of course, vested in the courts only. Originally the courts alone determined the qualifications of candidates for admission, but to avoid friction between the departments of government, the courts of this and other states have generously acquiesced in all reasonable provisions relating to qualifications enacted by the legislatures. *Hanson v. Grattan,* 84 Kan. 843, 115 P. 646, 34 L.R.A. (N.S.) 240; *State v. Cannon,* 196 Wis. 534, 221 N.W. 603.' *In re Greathouse,* 189 Minn. 51, 248 N.W. 735, 737 (1933).

"See, also, *In re Opinion of the Justices,* 279 Mass. 607, 180 N.E. 725, 727, 81 A.L.R. 1059 (1932)."

The court in *Sadler v. Oregon State Bar, supra,* concluded that the overlap of the judicial and legislative powers arises from the legislature's police power to protect the public welfare by promoting the efficient and impartial administration of justice. *See also Feldman v. State Board*

*of Law Examiners,* 438 F.2d 699 (8th Cir. 1971); *In re Keenan,* 313 Mass. 186, 47 N.E.2d 12 (1943); *Sharood v. Hatfield,* 296 Minn. 416, 210 N.W.2d 275 (1973); *Creditor's Service Corporation v. Cummings,* 57 R.I. 291, 190 A. 2 (1937); Annot., 144 A.L.R. 150 (1943).

Paradoxically, the majority does not mention, although the petitioners candidly admit, that the diploma privilege for graduates of the West Virginia University Law School was first initiated by the Legislature. 1897 W.Va. Acts 50. *See In re Application for License to Practice Law, supra.* It appears that this Court had no express rule relating to the diploma privilege until 1973.* When we did adopt a rule it followed the statute and extended the diploma privilege to graduates of the West Virginia University Law School. Thus, for a period of eighty years, this Court was content to follow a legislative enactment relating to the admission to the practice of law.

It is only when the Legislature took steps to withdraw the diploma privilege in 1981, which it had initially created, that this Court roused from its long slumber and declared there had been a violation of the separation of powers doctrine. One might understand this sudden awakening on the part of the majority, if they had given some reasons why the diploma privilege serves to promote the practice of law.

Only one other state, Wisconsin, currently has the diploma privilege. "Minimum Requirements for Admission to Legal Practice in the United States," The Lawyers Almanac 1982–83, 202 (1982). With the increasing development of federal regulatory laws, uniform acts, and federal constitutional decisions which have an impact on all states, it is sheer myopia to suggest that there is some substantial body of West Virginia law that is different from the general law. Surely, it is not for the uniqueness of our law that we retain the privi-

lege. Furthermore, the perpetuation of the diploma privilege carries with it some long term adverse consequences as several states refuse attorney admission under reciprocity unless the original admission has been by way of a bar examination. *E.g.,* Colorado, Kansas, Kentucky, Nebraska, and Texas. "Minimum Requirements for Admission to Legal Practice in the United States," *supra.*

The Montana Supreme Court considered the question of retaining the diploma privilege in *In the Matter of Proposed Amendments Concerning the Bar Examination and Admission to the Practice of Law,* 609 P.2d 263 (Mont.1980), and decided against its retention after a thorough analysis of the issue. I consider many of its observations extremely pertinent:

First: "There is no substantial or acceptable argument for retention of the diploma privilege. Its primary purpose has long ceased to exist—i.e. incentive to attract students to a small law school as it struggles to gain recognition in the legal community." 609 P.2d at 268–69.

Second: "There is, in fact, a double standard created by the diploma privilege and the Bar examination [for non-state law school graduates] as it relates to admission to the Bar." 609 P.2d at 269.

Third: "The fact that the law student knows he must face the Bar examination after graduation and before admission to practice is a healthy, educational stimulant.... [I]t is also a stimulant to the law school faculty to maintain high standards of legal education because the faculty knows that their students will be examined by state authorities." 609 P.2d at 269.

Fourth: "[T]he Bar examination serves an additional function in that the Bar examination has one essential difference from the law school examination—it is a comprehensive examination covering the

---

* The Rules for Admission to the Practice of Law were not published by Michie Publishing Company until the 1966 edition of the West Virginia Code, but this was an incomplete set of rules. The Clerk's office of the Supreme Court of Appeals issued periodically a printed document

entitled "Information Relating to Admission to the Bar of West Virginia," which contained the admission rules. In the 1971 document under Section I entitled "Statutes," the provisions of W.Va.Code, 30-2-1, were cited verbatim and this statute contained the diploma privilege.

entire field of several years of law study." 609 P.2d at 269.

Fifth: "[T]he American Bar Association has taken a positive, clear and very hard stand against the diploma privilege in connection with the standards of legal education." 609 P.2d at 269.

Finally, and perhaps the most telling point is that by maintaining the diploma privilege: "[W]e have effectively turned over the selection of who becomes a member of the ... Bar to ... [the faculty of the] School of Law. This is contrary to all present practice and has no recognizable redeeming value." 609 P.2d at 265.

For the foregoing reasons, I respectfully dissent.