THOMAS J. COLLINS *vs.* WILLIAM A. GODFREY, administrator.

Hampden.    March 9, 1949. — September 15, 1949.

Present: QUA, C.J., LUMMUS, RONAN, WILKINS, & WILLIAMS, JJ.

*Attorney at Law. Supreme Judicial Court,* Jurisdiction, Practice of law, Rules of court. *Constitutional Law,* Practice of law, Judiciary. *Jurisdiction,* Practice of law. *Rules of Court. Judge. District Court,* Judge. *Contract,* Validity.

The rule promulgated by the Supreme Judicial Court on December 7, 1935, 292 Mass. 596, that "no justice, special justice, clerk or assistant clerk of a district court shall be retained or employed or shall practice as an attorney on the criminal side of any court in the Commonwealth," is valid as an exercise by the judicial department, through the Supreme Judicial Court as its representative, of its power to control the practice of law by its own officers.

Discussion by QUA, C.J., of the scope of the power of the judicial department under art. 30 of the Declaration of Rights to control the practice of law by its own officers.

Whenever it appears that, in the practice of law, methods, customs, or habits have grown up among members of the bar which are undermining the confidence of the public in the courts and so are hampering the judicial department in the performance of its constitutional duties, that department has the power to proceed in a sensible way to eradicate the evil by laying down a rule for future guidance without prosecuting any individual. Per QUA, C.J.

The Supreme Judicial Court is the repository of the power of the judicial department to control the practice of law by its own officers.

Collins *v.* Godfrey.

The rule promulgated by the Supreme Judicial Court on December 7, 1935, 292 Mass. 596, that "no . . . special justice . . . of a district court shall be retained or employed or shall practice as an attorney on the criminal side of any court in the Commonwealth," prohibited a special justice from giving advice in his office to a client respecting a criminal complaint pending against the client in his court.

An attorney at law could not recover for legal services rendered to his client in violation of a rule of court prohibiting the attorney from rendering them.

CONTRACT. Writ in the Superior Court dated July 15, 1948.

The action was heard by *O'Brien,* J., upon a demurrer by the plaintiff to the defendant's answer and upon a case stated, and was reported without decision.

*E. O. Proctor,* for the plaintiff.

*W. A. Godfrey,* pro se.

QUA, C.J. This action is by an attorney at law, who at all material times was also a special justice of the District Court of Springfield, to recover for legal services in the nature of advice given by him to the defendant's intestate in relation to a criminal complaint against the latter which was pending in the same District Court. All advice was given in the plaintiff's office without appearance in court.

The defendant contends that the services were illegally rendered in violation of a general rule adopted by this court on December 7, 1935, which provides that "no justice, special justice, clerk or assistant clerk of a district court shall be retained or employed or shall practice as an attorney on the criminal side of any court in the Commonwealth." 292 Mass. 596. The principal question in the case is whether this rule is valid, the plaintiff contending that it was beyond the power of this court to promulgate such a rule. The plaintiff can lawfully make this contention, and we have given to it careful and unprejudiced consideration.

It is our deliberate and firm opinion that the rule was within the power of this court to promulgate, and that it is valid as an exercise by the court of its judicial powers relative to the practice of law.

Article 29 of the Declaration of Rights begins with these

sentences: "It is essential to the preservation of the rights
of every individual, his life, liberty, property, and character,
that there be an impartial interpretation of the laws, and
administration of justice. It is the right of every citizen
to be tried by judges as free, impartial and independent as
the lot of humanity will admit." The next article, art. 30,
provides expressly for the separation of executive, legislative,
and judicial powers, and for the exclusive exercise of judicial
powers by the judicial department of the government.
The members of the bar are officers of the courts. They
exercise their privileges as such either in the courts or in
giving advice upon matters which are or may become the
subject of proceedings in court. It must now be regarded
as settled that in the distribution of powers under art. 30
the ultimate power of general control over the practice of
law by its own officers fell to the judicial department.
Legislation may be enacted in aid of the judicial depart-
ment, and doubtless in appropriate instances standards of
conduct may be set up by statutes, but such statutes can-
not preclude the judicial department from imposing higher
standards or deprive that department of its ultimate power
of control. These principles have been fully developed
in opinions and decisions of this court, citing authorities
from many jurisdictions. *Opinion of the Justices*, 279 Mass.
607. *Opinion of the Justices*, 289 Mass. 607. *Keenan,
petitioner*, 310 Mass. 166, 168, 171–172. *Matter of Keenan*,
313 Mass. 186, 196–197. *Lowell Bar Association* v. *Loeb*,
315 Mass. 176, 180. *Berkwitz, petitioner*, 323 Mass. 41, 46.
Nothing would be gained by repeating here the reasoning
of these opinions and decisions.

It is true that the control of the judicial department over
the practice of law has usually been directed toward the
original selection of those who are to have the privilege of
practising or toward the disbarment or other discipline of
those who have for some reason proved unworthy of the
privilege, but neither the language used in the cases cited
and in recent cases from other jurisdictions nor sound reason
justifies limiting the control of the judicial department over

Collins *v.* Godfrey.

the practice of law to these particular aspects of the larger subject. In *Matter of Keenan*, 287 Mass. 577, this court said, "By virtue of its inherent power to control the conduct of its affairs, to maintain its dignity and to enable itself to do justice the court has a summary jurisdiction to inquire into the conduct of its officers and to deal with an attorney found to have committed any evil practice contrary to justice and honesty." 287 Mass. at page 582. In *Opinion of the Justices*, 289 Mass. 607, at page 612, the Justices said, "It is inherent in the judicial department of government under the Constitution *to control the practice of the law*, the admission to the bar of persons found qualified to act as attorneys at law and the removal from that position of those once admitted and found to be unfaithful to their trust" (emphasis supplied). See *Matter of Richards*, 333 Mo. 907; *Matter of Conner*, 357 Mo. 270; *Carter* v. *Commonwealth*, 96 Va. 791; *State* v. *Cannon*, 196 Wis. 534; *In re Cannon*, 206 Wis. 374; Dowling, "The Inherent Power of the Judiciary," 21 Am. Bar Assoc. Journal, 635. Instances are not wanting in which the power of the courts to inquire into and, as we think, by implication to deal with practices at the bar tending to bring the administration of justice into disrepute, without necessarily proceeding against any individuals, has been recognized. *Matter of Keenan*, 287 Mass. 577 ("abuses and unprofessional conduct"). *Matter of Bar Association of Hudson County*, 109 N. J. L. 275 ("ambulance chasing"). *People* v. *Culkin*, 248 N. Y. 465 (various practices. Historical review of the subject by Cardozo, Ch.J.). *Matter of Association of the Bar of City of New York*, 222 App. Div. (N. Y.) 580 ("ambulance chasing" and various attendant evils). *Matter of Brooklyn Bar Association*, 223 App. Div. (N. Y.) 149 ("ambulance chasing" and allied practices). *Rubin* v. *State*, 194 Wis. 207, 213–215 (champerty and maintenance).

Every disciplinary proceeding is in the nature of an inquest. *Boston Bar Association* v. *Casey*, 211 Mass. 187, 191. *Matter of Keenan*, 313 Mass. 186, 213. It is not a piece of

litigation in the ordinary sense. It need not follow the standard patterns of procedure. *Matter of Mayberry*, 295 Mass. 155, 160–161. *Matter of Keenan*, 313 Mass. 186, 197–204. *Matter of Welansky*, 319 Mass. 205, 207. It may be instituted by the court itself. *Randall, petitioner*, 11 Allen, 473, 479. *Matter of Stern*, 299 Mass. 107, 109. Only the court can determine whether any member of the bar has been guilty of improper conduct, and only the court can decide what consequences shall be visited upon him. *Ex Parte Secombe*, 19 How. 9, 13. It would be strange indeed if the judicial department, having such powers of investigation and discipline to the extent of professional death over its own officers, when it becomes aware of a custom or practice among some of them which tends to undermine public confidence in the administration of justice, should be reduced to the mere expedient of imposing consequences upon individuals for past conduct, a recourse which, as in the instance before us, might be so grossly unfair that it could not be considered. The judicial department is not helpless in the face of such a situation. Neither is it obliged to call the legislative department to its assistance. In its own proper field it is able to stand alone. Without going farther than is necessary to decide the case before us, we believe that whenever it appears that, in the practice of law, methods, customs, or habits have grown up among members of the bar which are undermining the confidence of the public in the courts and so are hampering the judicial department in the performance of its constitutional duties, that department has the power to proceed in a sensible way to eradicate the evil by laying down a rule for future guidance without prosecuting any individual. See *People* v. *Culkin*, 248 N. Y. 465, 473; *Matter of Association of the Bar of City of New York*, 222 App. Div. (N. Y.) 580, 586–587. This is within the reason and not contrary to the language of the cases previously cited. It is nothing more than control over the bar which in one way or another the judicial department has always exercised.

When necessity exists for resort to general judicial powers

of the type which we are now considering, we regard it as settled that the Supreme Judicial Court, as under the Constitution the highest court in the Commonwealth, is the proper representative of the judicial department and the repository of the power. *Keenan, petitioner*, 310 Mass. 166, 181–182. *Matter of Keenan*, 313 Mass. 186, 207–208. *Berkwitz, petitioner*, 323 Mass. 41, 47. *Matter of Conner*, 357 Mo. 270, 280. It does not follow from this that other courts cannot make rules not inconsistent with any general rule made by this court. See G. L. (Ter. Ed.) c. 213, § 3, as amended. We need not define their rule making powers in this respect.

The power to make rules of this kind is a delicate one to be exercised sparingly and when the need is apparent and pressing and only after careful consideration, but with the power goes the duty to exercise it on proper occasions.

Such an occasion existed in December, 1935, when the rule in question was promulgated. The effect upon a considerable portion of the people of seeing a judge sitting in court finding defendants guilty of various offences and imposing sentences, and the next day, or perhaps the next hour, seeing the same judge, very likely before one of his own associates, representing persons accused of similar offences, can easily be imagined. The effect of the employment of special justices to give advice without appearing in court differs only in degree. It cannot be doubted that many persons were led to believe that there were peculiar advantages in employing special justices to defend or advise them, and that many were led to believe that not all citizens were being tried before judges "as free, impartial and independent as the lot of humanity will admit." No doubt the only reason for not extending the scope of the rule to the civil side of the courts was the fear that, in some localities, competent men could not be induced to accept these part-time special justiceships, if their right to earn a living in practice should be so closely restricted. In fact, not long afterwards, a rule was adopted (see *post*, 753) forbidding special justices in the larger communities from prac-

tising on the civil side of their own courts. The regular standing justices of District Courts and the clerks and assistant clerks had long been forbidden by statute to take cases in their own courts. Special justices had been forbidden to take cases in which they had acted as justices. G. L. (Ter. Ed.) c. 218, § 17. The rule was, in effect, an extension of the statute deemed necessary to restore public confidence. It is easy to forget, even though not quite fifteen years have elapsed, but reference to the documents cited in the footnote will serve to recall the general condemnation which for a number of years had been visited upon the custom of special justices practising in their own courts, especially upon the criminal side. [1]

The plaintiff cannot maintain his further contention that the rule does not apply to advice given in his office without appearing in court. It is well settled that the giving of legal advice and office practice in general are included within the practice of law. *Opinion of the Justices,* 289 Mass. 607, 613–614. *Matter of Shoe Manufacturers Protective Association, Inc.* 295 Mass. 369, 372. *Rosenthal* v. *Shepard Broadcasting Service, Inc.* 299 Mass. 286, 289–290. *Lowell Bar Association* v. *Loeb,* 315 Mass. 176, 183. When such advice or practice relates to criminal cases it is "practice as an attorney on the criminal side" of a court within the meaning of the rule. The reason for the rule extends to such practice.

In considering the questions involved we have not found it necessary to determine whether reliance could also have been placed upon G. L. (Ter. Ed.) c. 211, § 3. See St. 1782, c. 9, § 2; Report of Commissioners Appointed to Revise the General Statutes (1834), Part III, Title 1, c. 81, notes,

[1] Second and Final Report of the Judicature Commission (House Doc. 1205 of 1921), pages 52–53, 144. Third Report of Judicial Council (1927), 71, 81. Ninth Report of Judicial Council (1933), 31. Tenth Report of Judicial Council (1934), 19. 7 Mass. Law Quar. (Feb. 1922), 185. 18 Mass. Law Quar. (Aug. 1933), 21. 20 Mass. Law Quar. (Nov. 1934), 19. Report of the Attorney General for Year Ending Nov. 30, 1928, page 28. Circular Letters of the Administrative Committee of the District Courts, July 1, 1929. page 4; July 1, 1932, pages 2–3; Jan. 2, 1934, page 13; Aug. 15, 1934, pages 6–7. Report of Special Crime Commission (Senate Doc. 125 of 1934), pages 123–125. Report of Special Commission on Public Expenditures (Senate Doc. 250 of 1934), page 36. Massachusetts Governors' Messages (1935–1938), pages 33, 113, 494, 495, 497, 499. The Boston Herald, Dec. 10, 1935 (editorial).

pages 11–12; *Commonwealth* v. *Cummings*, 3 Cush. 212, 214–215.

Since the rule is valid and prohibited the rendering of the services by the plaintiff, he cannot recover for rendering them. *Baskin* v. *Pass*, 302 Mass. 338, 342. *James J. Sullivan, Inc.* v. *Cann's Cabins, Inc.* 309 Mass. 519, 520–521. *Fouquette* v. *Millette*, 310 Mass. 351. Williston on Contracts (Rev. ed.), §§ 1786A, 1787, at page 5082.

*Judgment for the defendant.*