JAMES N. ELLIS, SR., & others[1] *vs.* DEPARTMENT OF
INDUSTRIAL ACCIDENTS.

Suffolk. March 5, 2012. - October 18, 2012.

Present: SPINA, CORDY, GANTS, DUFFLY, & LENK, JJ.

*Workers' Compensation Act,* Attorney's fees, Costs. *Attorney at Law,* Disciplinary proceeding. *Constitutional Law,* Separation of powers.

Discussion of the payment of attorney's fees and discipline of attorneys under the statutory scheme governing workers' compensation proceedings. [546-548]

This court concluded that G. L. c. 152, § 7C, which authorizes the senior judge of the Department of Industrial Accidents (department) to discipline an attorney by permanently or temporarily suspending the attorney's right to practice before the department, violates art. 30 of the Massachusetts Declaration of Rights, in that the statute infringes on a core judicial function, i.e., the power to admit and remove officers of the court, and to regulate their professional conduct. [548-551]

This court concluded that no conflict exists between 452 Code Mass. Regs. § 1.19(3), which precludes recovery of an employee's costs and attorney's fees if the employee does not accept an insurer's offer to pay the full amount of a workers' compensation claim, when such an offer is made at least five days before the date of the hearing before an administrative judge of the Department of Industrial Accidents (department), and the provisions of G. L. c. 152, § 13A (5), which governs the award of attorney's fees and expenses where a claim proceeds beyond the conference stage of the department's claims resolution process to the hearing stage. [551-560]

CIVIL ACTION commenced in the Supreme Judicial Court for the county of Suffolk on June 25, 2010.

The case was reported by *Gants,* J.

*Max D. Stern (John Cushman* with him) for the petitioners.

*William W. Porter,* Assistant Attorney General, for the respondent.

DUFFLY, J. The petitioners, attorneys who are licensed to practice law in the Commonwealth, challenge the validity of two aspects of the Commonwealth's workers' compensation

---

[1]Charles E. Berg and Teresa Brooks Benoit.

system. They claim first that G. L. c. 152, § 7C, which authorizes the senior judge (senior judge) of the Department of Industrial Accidents (department) to suspend the right of an attorney to "practice or appear before the department," violates the separation of powers explicitly provided for under art. 30 of the Massachusetts Declaration of Rights. They claim also that 452 Code Mass. Regs. § 1.19 (3) (2008), which precludes recovery of an employee's costs and attorney's fees if the employee does not accept an insurer's offer to pay the full amount of the compensation claim, when made at least five days before the date of the hearing before an administrative judge of the department, conflicts with G. L. c. 152, § 13A (5), which, according to the petitioners, provides that the attorney will be entitled to a fee "[w]henever" an insurer contests a claim for benefits and the employee prevails at a hearing on that claim.

The disciplinary proceedings against the petitioners arise from two separate matters before the department. James N. Ellis, Sr., Charles E. Berg, and Teresa Brooks Benoit represented Nancy Packard, and Ellis and Berg represented Pedro Ferreira, in claims for compensation for work-related injuries. In each case, an insurer's settlement offer that fully satisfied the employee's underlying claim for benefits was rejected, because the offer did not include the payment of costs and attorney's fees. Each case then proceeded to a hearing, where the claims for costs and fees were rejected. In addition, the petitioners were referred to the senior judge for discipline; in Ferreira's case, Ellis and Berg received temporary suspensions of the right "to practice or appear before the department." G. L. c. 152, § 7C.

The petitioners filed a petition in the county court seeking various forms of relief pursuant to G. L. c. 112, § 64; G. L. c. 211, § 3; and G. L. c. 231A, § 1, including injunctions against disciplinary suspensions by the department, injunctions against the imposition of any sanctions for making a claim for expenses and attorney's fees, and a judgment declaring that G. L. c. 152, § 7C, and 452 Code Mass. Regs. § 1.19(3) are void. On a joint motion of the parties, the single justice reserved and reported the case to the full court without decision. For the reasons that follow, we conclude that G. L. c. 152, § 7C, impermissibly assigns a judicial function to a department of the executive branch

in violation of art. 30, and that 452 Code Mass. Regs. § 1.19(3) is a valid interpretation of G. L. c. 152, § 13A.

1. *Background.* We set forth relevant details of the underlying proceedings, drawn primarily from the parties' agreed-on statement of facts submitted to the single justice, supplemented by reference to the related decisions rendered in these matters by the administrative judge, the department's reviewing board (reviewing board), and the senior judge.

a. *Nancy Packard's case.* The petitioners represented Packard in her claims for disability payments based on compensable injuries to her right arm that led to loss of function and disfigurement. In August, 2005, Ellis filed the claim, which the insurer denied. After two unsuccessful conciliations, an administrative judge at the conference level ordered payment of $1,768.92 for disfigurement and $4,183.50 for eleven per cent loss of function of Packard's right arm suffered in the course of her employment. The employee appealed and, pursuant to G. L. c. 152, § 11A, was examined by an impartial medical examiner, who offered the opinion that, to a reasonable medical certainty, Packard suffered from a fifteen per cent loss of function. On May 2, 2006, the insurer submitted a written offer to pay the additional $1,521.27 that was based on a fifteen per cent loss of function, but did not offer to pay attorney's fees and expenses. The employee did not accept the insurer's offer, and the case proceeded to a hearing in October, 2006.[2]

After a hearing, the administrative judge adopted as a finding the opinion of the impartial medical examiner and ordered the insurer to compensate the employee for a fifteen per cent loss of function. He denied the employee's request for fees and costs on the ground that such fees and costs were precluded by 452 Code Mass. Regs. § 1.19(3).[3] The administrative judge further

---

[2]The petitioners do not argue that, apart from the costs of litigation and attorney's fees, the insurer failed to offer the full amount of compensation claimed by Packard. They claimed at the hearing that the costs were approximately $850 to $900, but the administrative judge found that the costs had not been documented.

[3]The regulation provides in relevant part:

"When an insurer, . . . at least five days before a hearing, serves on a claimant or person receiving compensation or the representative of

found that the petitioners had not conveyed the insurer's settlement offer to the employee, in violation of Mass. R. Prof. C. 1.4, 426 Mass. 1314 (1998),[4] and had made strategic decisions based on their own interests that conflicted with those of their client, in violation of Mass. R. Prof. C. 1.7, as amended, 430 Mass. 1301 (1999).[5] He rejected the petitioners' claim that Packard was entitled to an award of attorney's fees and expenses, that such an award would constitute compensation in excess of what was offered by the insurer for the purposes of the regulation, and that she therefore would have been entitled to attorney's fees under the statute. The administrative judge sua sponte assessed the full cost of the proceeding against the petitioners pursuant to G. L. c. 152, § 14 (1), based on their decision to proceed to a hearing, despite having been offered the full satisfaction of the employee's compensation claim five months before the hearing date. The reviewing board upheld all aspects of the

> such claimant or person a written offer to pay [compensation as provided under the act], and such offer is not accepted, the insurer shall not be required to pay any fee under G. L. c. 152, § 13A, for such . . . hearing, unless the order or decision rendered directs a payment of said [compensation] in excess of that offered."

452 Code Mass. Regs. § 1.19(3) (2008).

[4]Rule 1.4 of the Massachusetts Rules of Professional Conduct, 426 Mass. 1314 (1998), provides:

> "(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information. (b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

The parties continue to dispute whether the petitioners relayed the offer to their client before proceeding to hearing. The administrative judge found that the employee was never informed of it prior to the hearing in October, 2006.

[5]Rule 1.7(b) of the Massachusetts Rules of Professional Conduct, as amended, 430 Mass. 1301 (1999), provides, in relevant part:

> "A lawyer shall not represent a client if the representation of that client may be materially limited . . . by the lawyer's own interests, unless (1) the lawyer reasonably believes the representation will not be adversely affected; and (2) the client consents after consultation . . . ."

See comment [6] to rule 1.7 ("The lawyer's own interests should not be permitted to have an adverse effect on representation of a client").

judge's decision and referred the matter to the senior judge for disciplinary proceedings under G. L. c. 152, § 7C, which remained pending as of the time of this petition.

b. *Pedro Ferreira's case.* Ferreira was injured after falling at work in August, 2004, and began receiving temporary total incapacity benefits under G. L. c. 152, § 34. In 2005, represented by Ellis and Berg, Ferreira filed a claim for compensation based on a psychiatric injury as a "sequela" to his physical injury, which was rejected by the insurer and denied at the initial conference. The employee appealed and on July 12, 2006, was examined by an impartial medical examiner. Eleven days before the scheduled hearing date, the insurer submitted a written offer to accept the claim for psychiatric benefits; the offer did not include payment of attorney's fees and expenses incurred in the course of representing Ferreira, and was rejected.

The case proceeded to a hearing in September, 2006, whereupon the employee's claim was denied.[6] The judge further concluded that the conduct of Ellis and Berg leading up to the hearing supported a finding that they had acted in their own interest to their client's detriment, citing rule 1.7(b) and comment 6.[7]

The employee appealed, and the reviewing board affirmed the denial of his claim. Additionally, the panel found that Ellis and Berg had pursued the appeal "without reasonable grounds," and assessed the cost of the proceeding as a sanction; it also referred the matter to the senior judge for further discipline. Thereafter, proceedings commenced before the senior judge, who exercised his power under G. L. c. 152, § 7C, to suspend the right of Ellis and Berg "to practice or appear before the

---

[6]When the administrative judge was informed on the first scheduled date of hearing, September 8, 2006, that the only issue in contention was the insurer's failure to offer payment of expenses and attorney's fees, he postponed the hearing so that the parties might attempt to settle the matter; however, the insurer resisted offering any further payment, and the hearing recommenced on September 20, a date to which all parties had agreed. The day before the hearing, the petitioners sought to continue the hearing without explanation, and the request was denied the following morning. Although the insurer's counsel appeared on the hearing date, neither Ellis, Berg, nor the client appeared, and the claim was dismissed for lack of sufficient evidence. We offer no opinion with respect to the propriety of this order.

[7]The same administrative judge presided over both cases.

department," for a minimum period of fifty days and twenty-five days, respectively.[8]

2. *Discussion.* a. *Statutory scheme.* Workers' compensation in the Commonwealth is governed by G. L. c. 152 (act), a statutory scheme that was enacted in response to the inadequacy of remedies available to injured workers through common-law tort claims and prior employers' liability statutes. See generally L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 1.1 (3d ed. 2003 & Supp. 2011). Today, the act functions as one component in a comprehensive system of publicly and privately administered programs designed to provide financial security for workers and their families in the event of work-related injury or death. See *id.* at §§ 1.2-1.4. Specifically, the act sets forth exclusive procedures by which an employee may be awarded compensation for injuries "arising out of and in the course of" employment. G. L. c. 152, § 26. See G. L. c. 152, §§ 1 (7A), 6.

A workers' compensation case for initial liability begins when an injured employee files a claim for benefits with an insurer (or self-insured employer). See G. L. c. 152, § 10 (1).[9] If the claim is contested by the insurer, it advances through as many as four procedural stages within the department's division of dispute resolution en route to a final determination. In the first stage, conciliation, a conciliator attempts to guide the parties toward a resolution through a nonadversary process. *Id.* Failing agreement by conciliation, the claim proceeds to a conference before an administrative judge, who will consider a recommendation from the conciliator, along with evidence produced by the parties. G. L. c. 152, §§ 10 (4), 10A (1).[10]

A party may appeal from the conference order and obtain a hearing before the administrative judge. G. L. c. 152, §§ 10A (3),

---

[8]Ellis and Berg appealed from the decision of the senior judge to the division of administrative law appeals, which granted a stay of execution, and the matter remains pending.

[9]After an initial liability claim has been resolved, an insurer may seek modification or discontinuance of benefits by the filing of a complaint pursuant to G. L. c. 152, § 10 (1).

[10]"The administrative judge may require and receive reports of injury, signed statements of the employee and any witnesses . . . , and other written and oral matter." G. L. c. 152, § 10A (1).

11. In anticipation of the hearing, where a claim involves a dispute over medical issues, an employee must be examined by an impartial medical examiner, whose examination report is admitted in evidence at the hearing and "shall constitute prima facie evidence of the matters contained therein." G. L. c. 152, § 11A (2). A party dissatisfied with the outcome of a hearing can appeal to the reviewing board. G. L. c. 152, § 11C.[11] A more detailed summary of this process is set forth in *Murphy* v. *Commissioner of the Dep't of Indus. Accs.*, 415 Mass. 218, 223-225 (1993).

Throughout the proceedings at the division of dispute resolution, a party may be represented by any person, including a licensed attorney. G. L. c. 152, § 7C. Only an attorney can be compensated for representing a claimant. *Id.* The award of attorney's fees and "necessary expenses" incurred in the course of representation of injured employees is governed exclusively by § 13A of the act; that is to say, the fees provided by § 13A are "the only fees payable for any services provided to employees" seeking workers' compensation through the department's claims resolution process.[12] See G. L. c. 152, § 13A (10).

In addition to regulating the payment of attorney's fees, the statute authorizes the department to discipline any person, including an attorney, who represents a party in proceedings before the department. Section 7C of G. L. c. 152 provides, in relevant part: "The senior judge may, for cause, deny or suspend the right of any person to practice or appear before the department."[13] A person so disciplined may appeal to the Commissioner of Industrial Accidents, who, "[u]pon receipt of such appeal, . . . shall refer the matter to the division of administrative law appeals . . . which shall have the authority to reverse, uphold or modify the removal or suspension after a hearing held pursuant to [G. L.

---

[11]The decision of the reviewing board may be appealed to the Appeals Court. G. L. c. 152, § 12 (2).

[12]By its own terms, however, G. L. c. 152, § 13A, does not govern the award of fees in cases arbitrated pursuant to G. L. c. 152, § 10B.

[13]The senior judge supervises the division of dispute resolution within the Department of Industrial Accidents (department). See G. L. c. 23E, § 6. The senior judge is appointed by the Commissioner of Industrial Accidents; serves a term coterminous with that of the Governor sitting at the time of appointment; and may be removed by the Governor upon the Commissioner's recommendation. *Id.*

c. 30A, § 13]." *Id.* A party may appeal from that decision to the Superior Court pursuant to G. L. c. 30A, § 14. See G. L. c. 152, § 7C.

b. *Power to discipline attorneys.* We address first the petitioners' claim that G. L. c. 152, § 7C, violates art. 30 by permitting a member of the executive branch, the department's senior judge, to deny or suspend the right "of any person," including an attorney,[14] to "practice or appear before the department."[15] We conclude that, by authorizing the department to discipline a member of the bar by permanently or temporarily suspending the right of the attorney to practice, G. L. c. 152, § 7C, infringes on a core judicial function in derogation of art. 30.

"What art. 30 forbids — 'the essence of what cannot be tolerated' — is legislative interference with the judiciary's core functions." *First Justice of the Bristol Div. of the Juvenile Court Dep't* v. *Clerk-Magistrate of the Bristol Div. of the Juvenile Court Dep't,* 438 Mass. 387, 396 (2003) (*First Justice*), citing *Chief Admin. Justice of the Trial Court* v. *Labor Relations Comm'n,* 404 Mass. 53, 56 (1989). Among these core functions is the power to admit and remove officers of the court, and to regulate their professional conduct. See, e.g., *Collins* v. *Godfrey,* 324 Mass. 574, 576 (1949); *Opinion of the Justices,* 279 Mass. 607, 610-611 (1932). "There is nothing in the Constitution, either in terms or by implication, to indicate an intent that the power of the judiciary over the admission of persons to become attorneys is subject to legislative control," and "[n]o

---

[14]We reject the petitioners' alternative argument that G. L. c. 152, § 7C, may be read as only authorizing the senior judge to discipline nonattorneys who appear before the department. The statute permits claimants to be represented "by an attorney or by *any other person,*" indicating that attorneys fall within the category of "persons" (emphasis added). *Id.* Thus, where the statute authorizes the senior judge to deny or suspend the right "of any person" to appear before the department, *id.,* such power extends by the statute's own terms to practice or appearance by attorneys as well as by lay representatives.

[15]Article 30 of the Massachusetts Declaration of Rights provides:

"In the government of this Commonwealth, the legislative department shall never exercise the executive and judicial powers, or either of them: the executive shall never exercise the legislative and judicial powers, or either of them: the judicial shall never exercise the legislative and executive powers, or either of them: to the end it may be a government of laws and not of men."

sound distinction can be drawn with respect to attorneys at law between the power to admit and the power to remove under the terms of the Constitution." *Id.* at 610. See *Berkwitz, petitioner,* 323 Mass. 41, 46 (1948) ("It is fully established that the control of membership in the bar is vested exclusively in the judicial department of our government"). See also *Collins* v. *Godfrey, supra*; *Lowell Bar Ass'n* v. *Loeb,* 315 Mass. 176, 180 (1943); *Matter of Keenan,* 313 Mass. 186, 196-197 (1943); *Keenan, petitioner,* 310 Mass. 166, 168, 171-172 (1941); *Opinion of the Justices,* 289 Mass. 607, 612 (1935).

We have recognized a limited role for the Legislature in enacting statutes that assist the judiciary in regulating the legal profession. Such enactments respecting the admission or removal of attorneys from practice can be "convenient, if not essential, to enable the judicial department properly to perform this duty." *Opinion of the Justices,* 279 Mass. at 611 (noting as an example the establishment, in 1897, of a State Board of Bar Examiners). But the judicial power to admit or remove members of the bar is "inherent and exists without a statute." *Id.* at 610. See *First Justice, supra* at 397. And where a legislative enactment relative to attorney admission or discipline conflicts with this court's jurisprudence, it is the statute that must yield. See *Collins* v. *Godfrey, supra.* "Only the court can determine whether any member of the bar is guilty of improper conduct, and only the court can decide what consequences shall be visited upon him." *Id.* at 578. Legislative enactments relating to the professional discipline of attorneys serve only as "an expression of policy for the guidance of the judicial department in exercising its constitutional prerogative of controlling the practice of law in the Commonwealth." *DiLuzio* v. *United Elec., Radio & Mach. Workers, Local 274,* 391 Mass. 211, 215 (1984).

The statute before us allocates to an agency of the executive branch the power to deny to an attorney, admitted to practice in the Commonwealth, the right to practice law, a power that, under our Constitution, is held only by the judicial branch. That the statute limits the exercise of this power to practice or appearance before the department, and does not purport to deprive attorneys of their right to practice before courts, does not save it.[16] See

---

[16]We note that Federal courts have frequently "reject[ed] challenges to the

*Opinion of the Justices*, 289 Mass. at 614 ("No valid distinction . . . can be drawn between that part of the work of the lawyer which involves appearance in court," and that part which involves out-of-court advice, drafting, and representation).

Nor does it matter that the department's rules are largely congruent with those adopted by this court. A parallel disciplinary system such as that created by the statute could lead to the interpretation and application of disciplinary rules in the context of workers' compensation cases that is inconsistent with the rules of professional conduct promulgated by this court.[17] See Massachusetts Rules of Professional Conduct, S.J.C. Rule 3:07, as appearing in 426 Mass. 1303 (1998).

It is similarly unavailing that the department's disciplinary decisions would be subject to judicial review before the Superior Court. See G. L. c. 30A, § 14. That court is without jurisdiction to hear attorney discipline cases. See S.J.C. Rule 4:01, § 1, as amended, 430 Mass. 1319 (2000). Further, appeals under the State Administrative Procedure Act, G. L. c. 30A, §§ 7 and 14, require that substantial deference be granted to the agency's factual determinations and its interpretations of its own rules. See part 2.c, *infra.* Such "attenuated" review does not suffice to save the statute. *Opinion of the Justices*, 365 Mass. 639, 647 (1974) (bill that creates an agency with power to exert control over all branches of government is antithetical "to the notion of separation of powers").

In sum, the Massachusetts Declaration of Rights does not afford the executive branch of government the power to impose

---

authority of [Federal] agencies to discipline attorneys practicing or appearing before them." See, e.g., *Touche Ross & Co.* v. *Securities & Exch. Comm'n,* 609 F.2d 570, 581 (2d Cir. 1979), citing *Goldsmith* v. *United States Bd. of Tax Appeals,* 270 U.S. 117 (1926). The United States Supreme Court, unlike this court, has established no overarching Federal system of attorney admission and discipline. See *Ex parte Wall,* 107 U.S. 265, 273 (1882). Contrast S.J.C. Rule 4:01, § 1, as amended, 430 Mass. 1319 (2000).

[17]There is no question that an attorney who violates the rules of professional conduct in the course of representing a workers' compensation claimant before the department is subject to discipline under the framework set forth by this court. See, e.g., *Matter of O'Connor,* 26 Mass. Att'y Discipline Rep. 458 (2010); *Matter of Scannell,* 21 Mass. Att'y Discipline Rep. 580 (2000). The act itself makes provision for referral to the board of bar overseers of any order or decision assessing penalties against an attorney for illegal or fraudulent conduct under G. L. c. 152, § 14 (2).

professional discipline on attorneys. For that reason, we conclude that the provision of G. L. c. 152, § 7C, authorizing the senior judge to discipline attorneys by denying or suspending their right to appear or practice before the department, violates art. 30 and is therefore invalid.[18]

c. *Regulation of attorney's fees and expenses.* In both Packard's case and Ferreira's case, the administrative judge concluded that the award of attorney's fees and expenses was precluded by 452 Code Mass. Regs. § 1.19(3). See note 3, *supra.* The petitioners claim that the regulation conflicts with G. L. c. 152, § 13A (5), which governs the award of attorney's fees and expenses where a claim proceeds beyond conference to the hearing stage:

> "Whenever an insurer . . . contests a claim for benefits and then either (i) accepts the employee's claim . . . within five days of the date set for a hearing pursuant to section 111 or (ii) the employee prevails at such hearing the insurer shall pay a fee to the employee's attorney in an amount equal to three thousand five hundred dollars plus necessary expenses. An administrative judge may increase or decrease such fee based on the complexity of the dispute or the effort expended by the attorney."

According to the petitioners, the regulation is inconsistent with what they view as the statute's stated requirement that attorney's fees and expenses be awarded in all cases in which the employee "prevails at [a] hearing," so long as an offer made by the insurer (even in the full amount of the compensation claim) is rejected by the employee.[19]

Because the Legislature has expressly delegated to the department authority over the administration of the workers' compensation system, see G. L. c. 152, § 5, our review is "guided by the

---

[18]We do not conclude that the department lacks authority to impose monetary and other case-specific sanctions for misconduct that occurs in the course of representation in a workers' compensation proceeding.

[19]The petitioners focus on the second circumstance in claiming that, because the employee rejected the insurer's offer and instead opted to proceed to a hearing where the employee received a benefit (albeit equal to the amount claimed), the employee prevailed. This argument misconstrues the event that triggers whether a fee is due under the statute.

established principle that [the department's] '[r]egulations are not to be declared void unless their provisions cannot by any reasonable construction be interpreted in harmony with the legislative mandate.' " *Duarte* v. *Commissioner of Revenue,* 451 Mass. 399, 408 (2008), quoting *Smith* v. *Commissioner of Transitional Assistance,* 431 Mass. 638, 646 (2000). Thus, "[o]nly an 'agency regulation that is contrary to the plain language of the statute and its underlying purpose may be rejected by the courts.' " *Duarte* v. *Commissioner of Revenue, supra,* quoting *Smith* v. *Commissioner of Transitional Assistance, supra.* See *Biogen IDEC MA, Inc.* v. *Treasurer & Receiver Gen.,* 454 Mass. 174, 186 n.22 (2009) (court will consider plain meaning, history, and purpose of statute to determine whether regulation reflects permissible reading).

Consistent with these principles, our review proceeds in two stages. "First, we determine, using conventional tools of statutory interpretation, whether the Legislature has spoken with certainty on the topic in question, and if we conclude that the statute is unambiguous, we give effect to the Legislature's intent." *Goldberg* v. *Board of Health of Granby,* 444 Mass. 627, 632-633 (2005). If, however, "the Legislature has not addressed directly the pertinent issue, we determine whether the agency's resolution of that issue may 'be reconciled with the governing legislation.' " *Id.* at 633, quoting *Nuclear Metals, Inc.* v. *Low Level Radioactive Waste Mgt. Bd.,* 421 Mass. 196, 211 (1995).

The statute at issue addresses specifically the circumstances in which an employee is entitled to an award of attorney's fees on resolution of a claim. Section 13A calibrates the award of fees based on when in the life of a case pending before the department the claim is resolved, either by agreement or order. Whether an employee will be awarded fees, and in what amount, relates directly to the stage at which proceedings terminate; with exceptions not here relevant, the only fees payable are attorney's fees "specified in" G. L. c. 152, § 13A (10).

At the beginning of a claim proceeding, a $700 fee will be awarded where an insurer contests an initial liability claim "by failing to commence the compensation requested within twenty-one days" of receiving the claim, but then "agrees to pay," the claimed compensation at any time prior to a conference. G. L.

c. 152, § 13A (1).[20] By necessary implication, an insurer may avoid imposition of a fee award only by commencing payment of the compensation requested within the twenty-one day period. An insurer who "agrees to pay" the claim after the twenty-one day period but prior to a conference will be liable to the employee for an attorney's fee of $700. If the insurer continues to contest the claim, however, and the employee is awarded a benefit at conference, the employee is entitled to a fee award of $1,000, G. L. c. 152, § 13A (2).

General Laws c. 152, § 13A (5), the statutory provision at issue here, entitles an employee to an attorney's fee, presumptively in the amount of $3,500,[21] if the insurer "files a complaint or contests a claim for benefits and then either (i) accepts the employee's claim or withdraws its own complaint within five days of the date set for hearing pursuant to section eleven; or (ii) the employee prevails at such hearing."[22] Conspicuously absent is any requirement of a settlement or agreement between the parties; the triggering event is simply the insurer's acceptance of the claim for benefits. Thus, if an insurer accepts a claim after conference, but sooner than five days before the date set for the hearing, the insurer will avoid imposition of a fee award; if the insurer does not accept the claim until after the five-day period (that is, within five days of the date set for hearing), a fee will be awarded. To be sure, as we have said, the avoidance of fees is by implication. But the statute is constructed so that only attorney's fees specified in G. L. c. 152, § 13A, shall be

[20]The specified dollar amounts of the attorney's fees cited in this opinion reflect the amounts established in St. 1991, c. 398, § 35. "Section 13A (10) specifies that the amounts in § 13A (1)-(6) are to be adjusted annually on October 1. Apparently the practice has been to publish these amounts by circular letter or other public means." *Spaniol's Case*, 81 Mass. App. Ct. 437, 440 n.5 (2012), citing L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 24.1 (3d ed. 2003) (Nason).

[21]In some circumstances, the administrative judge may increase or decrease the presumptive fee based on the complexity of the dispute or the amount of effort expended by the attorney. See G. L. c. 152, § 13A (2), (5), (6). Other adjustments may be made to the fee as specified in the act. See, e.g., G. L. c. 152, § 13A (1) (reducing $700 fee to $350 where attorney fails to appear at scheduled conciliation).

[22]Where an insurer appeals from the decision of an administrative judge, and the employee prevails before the reviewing board, the attorney is entitled to an additional fee of $1,000. G. L. c. 152, § 13A (6).

payable; where the statute makes no provision for an attorney's fee, none may be paid.[23]

This construction is supported by the statute's legislative history. The modern workers' compensation act, St. 1985, c. 572, § 28A (1985 act), added the new G. L. c. 152, § 13A, in part to encourage early voluntary resolution of claims and eliminate incentives to prolong litigation.[24] "In broad and general terms, [G. L. c. 152, § 13A,] can be read to reflect two legislative goals: to ensure adequate legal representation of the injured worker or his dependents, and to discourage protracted litigation." *Spaniol's Case*, 81 Mass. App. Ct. 437, 440, further

[23]Under this construction of the act, where an employee rejects an insurer's offer to pay the full amount of a claim for benefits, the employee cannot later be said to have "prevailed" at a subsequent hearing that results in the employee being in the same position had the employee accepted the insurer's prehearing offer. In such a case, it is the employee's rejection of an offer — not the insurer's appeal from an order — that compelled the parties to proceed to a hearing. Section 1.19(3) of the regulation, which reflects this view of "having prevailed," is reasonable in light of the goals of the legislation. Contrary to the petitioners' claims, it is therefore not relevant that under certain Federal fee-shifting statutes, a plaintiff may be considered a "prevailing party," even where a defendant has made a settlement offer in an amount equal to or greater than the relief ultimately obtained at a trial. See, e.g., *El Paso Indep. Sch. Dist.* v. *Richard R.*, 591 F.3d 417, 424-425 (5th Cir. 2009), cert. denied, 130 S. Ct. 3467 (2010); *Lohman* v. *Duryea Borough*, 547 F.3d 163, 167-168 (3d Cir. 2009).

[24]A leading treatise on workers' compensation in the Commonwealth describes the genesis of St. 1985, c. 572. See Nason, *supra* at § 24.1. The authors note: "[a]s a result of a long effort by labor, the business community, the insurance industry, the medical profession, and the workers' compensation bar to reform the workers' compensation system, the act was substantially changed in 1985 . . . The [act] attempted to meet the chief complaints which had surfaced during a year of state-wide hearings . . . [that] included concerns that . . . injured employees and their dependents had to wait too long to receive workers' compensation benefits. In addition, too many cases were controverted, and there were significant delays in the adjudication and payment of claims." *Id.* at § 2.5, at 25. "Labor unions objected to the over-utilization of lump sum settlements . . . and to the cost of attorney's fees which was viewed as an unwarranted burden on injured claimants. . ." *Id.* at § 2.5, at 26-27. The effort to draft a bill acceptable to all stakeholders failed; additional revisions were made. See St. 1986, c. 662; St. 1987, c. 691. See Nason, *supra* at § 2.6, at 27. The 1987 act was designed, at least in part, "to further encourage early voluntary resolution of claims . . . and eliminate perceived financial incentives that would encourage litigation (such as the non-payment of attorney's fees prior to dispute resolution)." *Id.* at § 2.6, at 28.

appellate review granted, 462 Mass. 1101 (2012), citing *Green's Case*, 52 Mass. App. Ct. 141, 144 (2001), and L.Y. Nason, C.W. Koziol, & R.A. Wall, Workers' Compensation § 24.1 (3d ed. 2003).

Under the 1985 act, inserted by St. 1985, c. 572, § 28A, G. L. c. 152, § 13A, made specific provision for an award of fees in increasing amounts, correlating with the length of time that an insurer fails to act as the case progressed through various stages of the dispute resolution process.[25] A fee would be awarded whenever the insurer accepted liability for the claim or withdrew its complaint after the claim was referred to the division of dispute resolution but prior to conference, G. L. c. 152, § 13A (1); if, after a conference, benefits were ordered or an insurer accepted a claim, but prior to the fifth day before a date set for hearing, G. L. c. 152, § 13A (2); and if the insurer accepted the claim within five days of the hearing, or the employee prevailed at the hearing, G. L. c. 152, § 13A (3). There was no provision for payment of a fee at any time prior to referral to the division of dispute resolution, and the statute specifically provided: "No attorney's fee shall be paid unless a claim . . . has at some time been referred to the division of dispute resolution." G. L. c. 152, § 13A (7).

This structure — in which the statute made specific provision for when an attorney's fee would, and would not, be paid — was altered when G. L. c. 152, § 13A, was rewritten in 1987. See St. 1987, c. 691, § 8. Section 13A (7) was eliminated. The current provision provides that "[t]he attorneys' fees specified in this section shall be the only fees payable for any services

---

[25]Under the 1985 act, the fee was calculated based on a percentage of the average weekly wage in the Commonwealth; the percentage increased as the claim progressed without resolution through the various stages of the process. Thus, for example, where an insurer accepted liability for a claim prior to conference, the employee's attorney was entitled to a fee equal to 1.5 times the average weekly wage in the Commonwealth, G. L. c. 152, § 13A (1), inserted by St. 1985, c. 572, § 28A; if an insurer accepted a claim within five days of hearing, or if the employee prevailed at such hearing, a fee was to be approved equal to seven times the average weekly wage, G. L. c. 152, § 13A (3), as amended by St. 1985, c. 572, § 28A. Since the statute was amended in 1991, the fee to be paid is no longer based on an average weekly wage, but is a flat fee that increases in proportion to the length of time that the insurer fails to act. See G. L. c. 152, § 13A, as appearing in St. 1991, c. 398, § 35. See also note 20, *supra*.

provided to employees under this chapter." G. L. c. 152, § 13A (10). See G. L. c. 152, § 13A (8), as appearing in St. 1987, c. 691, § 8. Also added were two new provisions specifying when in the context of initial claims an insurer would be required to pay an attorney's fee on behalf of the employee, including one providing for an award of attorney's fees at any time prior to five days before a hearing:

> "Whenever an insurer contests a written claim for benefits, . . . and then, at any time prior to five days before a hearing pursuant to section eleven, the insurer agrees to pay with or without prejudice . . . the compensation due, said insurer shall pay an attorney's fee sufficient to defray the reasonable costs of counsel retained by the employee."

G. L. c. 152, § 13A (1), as appearing in St. 1987, c. 691, § 8.[26] The language of this provision specifically provided for an attorney's fee award in the circumstances of this case, where benefits were ordered to be paid to the employee after conference and the insurer's agreement thereafter to pay the employee's claim for compensation was made "five days before a hearing." *Id.*

The Legislature again made comprehensive changes to the act in 1991. See St. 1991, c. 398. It eliminated from § 13A the very language cited above that would have provided for an

---

[26]In addition, the 1987 act amended G. L. c. 152, § 13A, by adding the provision that a fee would be awarded whenever an insurer "files a complaint or contests a claim for benefits and then (i) accepts the employee's claim or withdraws its own complaint within five days of the date set for a hearing pursuant to section eleven; or (ii) the employee prevails at such hearing." G. L. c. 152, § 13A (3), as appearing in St. 1987, c. 691. The 1987 act eliminated the provision that previously had provided for a fee if an insurer accepted a claim after a conference has been held, but prior to the fifth day before the date set for hearing. Compare G. L. c. 152, § 13A (2), inserted by St. 1985, c. 572, § 28A, with G. L. c. 152, § 13A (2), as appearing in St. 1987, c. 691, § 8. Read in conjunction with the statutory admonition that the only fees that would be awarded were those specified in § 13A, two things are noteworthy: first, no fees were specified, and thus none would be awarded, if an insurer commenced compensation within fourteen days of receipt of a claim. See G. L. c. 152, § 13A. See also G. L. c. 152, § 7, as appearing in St. 1985, c. 572, § 18. This was consistent with the Legislature's goal of eliminating financial incentives that would encourage litigation. See note 24, *supra.* Second, the provision for a fee after conference was eliminated.

award of fees in the circumstances presented in this case, and that the petitioners argue must be read into G. L. c. 152, § 13A (5).[27] "Where the Legislature has deleted such language, apparently purposefully, the current version of the statute cannot be interpreted to include the rejected requirement." *Kenniston* v. *Department of Youth Servs.*, 453 Mass. 179, 185 (2009), citing *Commonwealth* v. *Clerk-Magistrate of the W. Roxbury Div. of the Dist. Court Dep't*, 439 Mass. 352, 355 (2003). Moreover, it is apparent from the debate over the pending legislation that occurred at the time, see note 24, *supra*, that the Legislature wanted to create incentives within the structure of the act that would encourage attorneys representing employees to resolve claims no later than conference, in this way securing some compensation for such attorneys while avoiding a time-consuming and costly hearing. Because the regulation achieves this purpose, we do not consider it in conflict with the provisions of G. L. c. 152, § 13A.[28]

The petitioners raise a further concern that merits comment. They note that 452 Code Mass. Regs. § 1.19(3) eliminates attorney's fees altogether in cases where an insurer successfully disputes a claim through the conference stage, and then makes a timely settlement offer prior to a hearing. Indeed, the administrative judge, in his written decision in Packard's case, acknowledged that the proceedings in that matter exemplified the "unfortunate," though "not uncommon," scenario in which a claim for benefits is denied at the conference stage and appealed by the employee; and then, more than five days before the scheduled hearing date, the insurer offers to satisfy the claim in

---

[27]The Legislature, by St. 1991, c. 398, § 35, also increased to twenty-one days (from fourteen) the window within which an insurer could commence payment of a claim without incurring liability for the employee's attorney's fee. It added two tiers to the graduated system of fee awards: first, by providing for a fee award ($700) whenever an insurer agreed to pay a claim at any time prior to conference, G. L. c. 152, § 13A (1), as appearing in St. 1991, c. 398; and second, by providing for a fee award ($1,000) whenever an insurer contests an initial liability claim for benefits and then is ordered to pay such benefits pursuant to a conference order, G. L. c. 152, § 13A (2), as appearing in St. 1991, c. 398.

[28]The regulation at issue, 452 Code Mass. Regs. § 1.19(3), was promulgated on October 28, 1988, prior to the 1991 amendment to G. L. c. 152, § 13A (5). "It should be noted that St. 1991, c. 398 has, in many instances, codified existing [department] Rules and Regulations." Nason, *supra* at § 24.2.

full. In this scenario, the insurer avoids any payment of the employee's costs or attorney's fees.

The petitioners argue that the prospect of escaping entirely the payment of attorney's fees may provide insurers an incentive to contest any claim through conference, even one with apparent merit, and thereafter make a prompt settlement offer for the full amount of the claim, excluding attorney's fees. So long as the insurer meets with success through the conference stage, the insurer will have avoided the $1,000 attorney's fee owed where an employee succeeds at conference, while also escaping the $3,500 fee that would be assessed at a hearing. Conversely, employee's counsel will go entirely uncompensated. They claim that, if such a dynamic were repeated in a sufficient number of cases, the result would be to drive private attorneys out of the workers' compensation business.

Although the incentives described by the petitioners may well manifest themselves in some number of cases,[29] it is far from clear that the regulation will result in the sort of systematic abuse contemplated by them. The petitioners' concerns are mitigated by G. L. c. 152, § 14 (1) (*a*) and (*b*), which provide that the entire cost of the proceedings may be assessed against an insurer (or employee or attorney acting behalf of an employee) if an administrative judge "determines that any proceedings have been brought, prosecuted, or defended . . . without reasonable grounds." The act requires prompt and full disclosure of the employee's basis for, or insurer's medical documentation of, a claim of injury under the act. See, e.g., G. L. c. 152, §§ 6, 10, 14, 30A. And it provides for the imposition of penalties if it is

---

[29]We acknowledge the potential inequity that arises when an attorney zealously, but unsuccessfully, pursues a compensable claim through the conference stage, only to receive no fee should the insurer offer to accept the claim as late as six days prior to the scheduled hearing. But we are also cognizant that "[h]owever commendable it might be to reward persistence . . . , the judgment whether to allow counsel fees is a legislative one." *Rival's Case*, 383 Mass. 172, 176 (1981) (addressing failure of act in effect at that time to provide for employee's attorney's fees where employee, not insurer, appeals to court and prevails). The department's regulation, exercising this expressly granted legislative power, is "accorded all the deference [that would be] due to a statute" addressing the same mandate. *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, 723, cert. denied sub nom. *Formaldehyde Inst., Inc.*, v. *Frechette*, 464 U.S. 936 (1983).

determined that, in any proceeding within the division of dispute resolution, a party, including an attorney, has "concealed or knowingly failed to disclose that which is required to be disclosed." G. L. c. 152, § 14 (2). Additionally, when the act was revised in 1991, the Legislature expanded G. L. c. 23E, § 3, authorizing the department's division of administration to investigate "patterns of unreasonably controverting claims by insurers, employers or other entities." St. 1991, c. 398, § 1.

The department could reasonably have concluded that any residual risk of abuse was outweighed by the regulation's potential benefits: the regulation may reasonably be thought to further the prompt and efficient resolution of workers' compensation disputes. For example, the regulation places a strong incentive on counsel to collect and present persuasive and credible medical evidence at the conference stage rather than relying upon the postconference report of the independent medical examiner. Similarly, the regulation undermines the incentive that an employee's counsel might otherwise have to advise the employee to prolong litigation through the hearing stage in order to obtain the heightened fees associated with the hearing. In these and other ways the regulation can reasonably be thought to reflect the Legislature's strong preference that workers' compensation claims be processed efficiently and that parties not engage in protracted litigation.[30] See, e.g., *Alliy* v. *Travelers Ins. Co.*, 39 Mass. App. Ct. 688, 690-691 (1996) ("The legislative purpose in the statutory scheme is not elusive. . . . [T]he Legislature has chosen to discourage dilatory handling of injury claims arising out of industrial accidents and conversely encourages efficient handling of those claims").

The question whether the regulation's potential salutary effects will predominate over its risks is best answered in light of

---

[30]Accounts of floor speeches made by legislators during the consideration of revisions to the statute lend support to this view. See, e.g., State House News Service, Nov. 5, 1991 ("The bill limits legal fees [and] attempts to force cases to resolution . . ."); State House News Service, Dec. 10, 1991 (Representative Finneran expressed view that reform was needed to address "backload" of cases, stating, "It is unfair for any employer or insurer to carry someone for a year while they wait for a conference. It's also unfair to employees who have to wait for up to a year for their cases to be processed. . . . We wanted to eliminate incentives for litigation").

experience. It is proper, therefore, that we grant deference to the department, which daily processes workers' compensation claims. Because the challenged portion of the department's regulation reflects a permissible interpretation of G. L. c. 152, § 13A, as reflected in the history of the statute, and because it is rationally related to that statute's goals, the petitioners' challenge to the regulation must fail.

3. *Conclusion.* We conclude that G. L. c. 152, § 7C, is invalid as a violation of art. 30, insofar as it authorizes the senior judge of the Department of Industrial Accidents to suspend attorneys from appearing before the department. We conclude also that 452 Code Mass. Regs. § 1.19(3) is a valid interpretation of G. L. c. 152, § 13A. The matter is remanded to the county court for further proceedings consistent with this opinion.

*So ordered.*